## MATTER OF OPENING FIRST STREET, IN GRAND RAPIDS.

### (GRAND RAPIDS v. GRAND RAPIDS & INDIANA R. R. Co.)

*Street opening across railway track—Condemnation proceedings—Vicinage— Jurors—Parties—Damages—Estoppel.*

1. A street opening law is not made unconstitutional by the omission to provide that before proceedings can be taken thereunder, there must be some attempt to get the permission of the owners of property to be affected.

2. The objection that before proceedings to open a street were taken no attempt was made to obtain the consent of property owners cannot be raised on review in the Supreme Court if not made at an earlier stage.

3. The " vicinage " from which a jury of freeholders in a street opening case must be drawn (Const., Art. xviii, sec. 2) may be limited by statute to the municipality instead of including the county at large; but in such case the whole municipality will be within it.

4. The presumption is against the existence of any such bias on the part of a street opening jury as will make its verdict unfair.

58 MICH.—41

| | |
|---|---|
| 58 | 641 |
| 61 | 509 |
| 64 | 366 |
| 58 | 641 |
| 66 | 44 |
| 66 | 55 |
| 58 | 641 |
| 75 | 457 |
| 75 | 460 |
| 75 | 464 |
| 75 | 467 |
| 58 | 641 |
| 79 | 475 |
| 58 | 641 |
| 83 | 272 |
| 58 | 641 |
| 90 | 392 |
| 58 | 641 |
| 91 | 152 |
| 58 | 641 |
| 106 | 534 |
| 106 | 537 |
| 58 | 641 |
| 127 | 222 |
| 127 | 235 |
| 58 | 641 |
| 139 | 11349 |
| 58 | 641 |
| 141 | 9420 |
| 58 | 641 |
| 149 | 5672 |
| 58 | 641 |
| e158 | 5612 |

5. The essential duty of a jury in a street opening proceeding is to pass on the necessity for the work, and not merely the necessity of taking the land for it.

6. Act 124 of 1883 for taking land for streets (1 How. Stat. pp. 1295–1300) is not clearly open to the objection that it does not require the necessity of the improvement to be determined by a jury. And if the provisions for special taxation districts are invalid, they do not invalidate the entire act, since a general tax is also contemplated.

7. The incompetency of some of the jurors returned by the sheriff does not affect the array if those sworn were competent.

8. The mortgagees of the franchises and easements of a railway company need not be made parties to a proceeding to condemn a right of way across its track for a street, if the track is not disturbed and the company is left in control of the road.

9. The proper amount of compensation for land taken in condemnation proceedings cannot be sworn to by witnesses, but must be found by the jury from proper data.

10. Compensation for, rather than the value of, the land taken is what should be allowed in condemnation proceedings, and includes more.

11. The damage to a railroad from opening a street across it includes the expense entailed by the crossing, and may involve outlays for making it safe.

12. How far a city is estopped from opening a street across a railway track by its previous course in inducing the railway company to lay its track on the faith that the street would not be opened;—and how such estoppel, if any, is to be pleaded—Q.

Appeal from the Superior Court of Grand Rapids. (Parrish, J.) November 18, 1885.—January 6, 1886.

Proceedings to open a street. The Grand Rapids & Indiana R. R. Co. appeals. Reversed.

*T. J. O'Brien* and *Jas. H. Campbell* for appellant. Negotiations with property owners before taking proceedings to condemn their land are jurisdictional: *C. & M. L. S. R. R. Co. v. Sanford* 23 Mich. 418; *M. C. & L. M. R. R. v. Clark* 23 Mich. 519; *Arnold v. Decatur* 29 Mich. 77; *Morseman v. Ionia* 32 Mich. 283; *Whisler v. Drain Com'r* 40 Mich. 591; *Laue v. Saginaw* 53 Mich. 442; the oath administered to jurors in a street opening case must be co-extensive with their constitutional duty: *Powers' Appeal* 29 Mich. 504; *Bowler v. Drain Com'r* 47 Mich. 155.

City Attorney *J. W. Ransom* for appellee.

CAMPBELL, C. J. The appeal in this case is brought to review certain proceedings had under the general law and not under the charter of Grand Rapids, to open a street in extension of its original bounds. The law in question is one passed in 1883, to provide uniform methods for the appropriation of property in cities and villages, which was approved May 31, 1883, and is printed in 1 How. Stat. on pp. 1295–1300.

On the 22d of September, 1884, the common council of Grand Rapids adopted resolutions declaring the necessity of opening First street, and widening and extending it of a uniform width of sixty-six feet from the west line of Broadway to the west boundary of the city, including in the description of the land to be taken a part of appellant's railway, thirty-three feet by sixty-six feet. The city attorney was ordered to proceed in the Superior Court of Grand Rapids, and accordingly brought these proceedings.

The appellant appeared by attorney, and was represented throughout the proceedings. Upon December 30, which was the original day of hearing, various objections were made to the sufficiency of the steps taken to give jurisdiction, and also to the validity of the statute in question. A panel of twenty-four freeholders was ordered, from which six names were struck on each side. Of the remaining twelve, who were duly summoned, three were excused, and two were found not to be freeholders. Five competent talesmen were called, and the jury thus made up acted and found a verdict. Some challenges were made to jurors for remoteness.

Evidence was given by appellant of a trust mortgage of its road, and all its property and franchises, to secure the payment of bonds, which was in the usual form of railway mortgages, and retained to the appellant the ordinary control of its affairs until dispossessed. Objection was then made that until the trustees were made parties the proceedings were illegal. This was overruled.

Two witnesses were sworn upon the damages of appellant, and the questions asked and allowed against objection to be answered, were general as to " what amount of compensation "

ought to be paid to appellant, and the witnesses gave in reply each a single round sum,—one saying $300, and the other $125. The jury gave $200.

The jury viewed the premises, but were charged that in fixing the compensation they must be governed by the evidence and not by their own arbitrary opinions as to what should be awarded. Some further instructions were given on the general question, which are not important as to appellant. The effect of the charge on the duty of the jury in determining necessity will be referred to, as far as required, in considering that feature of the record.

After the verdict a motion for a new trial was made, based upon the legal insufficiency of the action of the common council, the disregard by the jury of the evidence, and upon a showing by affidavit that appellant was induced to maintain its track and build a station in that part of the city by an agreement made by the city in conformity with an understanding with the land-owners in the vicinity, that First street should not be continued across the railroad. This motion was also denied.

As the record stands and was presented, we do not think it proper to discuss any fundamental questions not necessary to a decision. While some suggestions are made which are not lacking in force, we are not disposed to enter ourselves, without a more exhaustive argument, upon a search and comparison of all the possible provisions of law that may have a bearing on possible cases. It is the duty of courts to see that no one is wronged by proceedings to deprive him of his freehold, and to this end the appellate power given by the statute is of the broadest character. But it is quite as important to construe laws, where it can be done fairly and without violence to their terms, in such a way as to give them operation for lawful ends, if practicable. And while some statutes are purposely made complete in themselves and independent of others, nevertheless most of them form part of a system, and may be construed in that view.

The present statute (No. 124 of 1883) was intended to provide a method applicable to cities and villages generally,

whereby lands may be condemned for public uses. It is a modification of two successive statutes passed in 1877 and 1882, to reach the same results. It provides, after the municipality has determined upon the policy of a public improvement, for a jury of freeholders from the municipality to determine the public necessity and the proper compensation for land, taken and it purports to exclude from the consideration of the jury any allowance of benefits to set off against the value. In this respect it is fairer than its predecessors. But it is claimed that the statute is not effectively framed to secure the just results intended.

It is first urged that no showing is required that attempts have been made to get private consent and failed. Many statutes have required the failure of such an attempt to be set out as a ground of jurisdiction, and it is certainly proper that proceedings in invitum should not be had unless necessary. But we are not able to find authority for holding a law unconstitutional for not expressly providing that this should be made to appear. How far it may become material in the subsequent inquiry we need not now consider. The objection was not made at an early stage of the proceedings and it cannot properly be made now.

It is claimed that the Constitution requires a jury of freeholders residing in the vicinity of the property, and that this vicinity means the county at large and not a part of the county. This statute requires the jury to come from the municipality. That certainly is more definitely the vicinage, according to common-law principles, than the county would be. And we held in *People v. Hurst* 41 Mich. 328, that in a municipal court the venue might lawfully be municipal. During the hearing below objection was made to some jurors as living too far away, although within the city. In our opinion the city was all within the vicinage. No question is raised concerning the existence of any bias in fact which would stand in the way of a fair verdict. It must be presumed no such difficulty appeared.

A more serious question is raised by the claim that the jury were not required to find the necessity for the opening

of the street, but only the necessity for taking the land in question for the street declared necessary by the council.

This is a practical difficulty which has caused much trouble. It has often happened that juries have been led or allowed to evade their own responsibility in passing on the necessity for the work itself. That is, as we have frequently pointed out, their most essential duty, because, if it is taken for granted the road is to be laid out, the position of the particular parcels on the line is fixed when the road is fixed. The object of the Constitution is to prevent all needless appropriations of private property, which are too often made for ends in which the public are in no strait, and for private fancy or emolument rather than the general welfare. If this statute bears such a meaning it would be difficult to uphold it.

The first section very plainly requires the uses to be within the Constitution, and the second requires a solemn declaration by the municipality of the necessity of the public improvement itself, as a foundation for proceeding further. The petition is to the same effect. Section 3. The oath of the jury is to determine "whether there is necessity for taking for the use or benefit of the public" the property described, which includes the whole parcel within the improvement. The form of verdict set out in the statute is not so definite as it might be, inasmuch as it adds "for the proposed public improvement." But when we take the whole statute together, it evidently means such a finding as the Constitution warrants. It requires the judge to instruct the jury upon the law of the case, and the charge ought to leave no doubt concerning the duty to be performed by that body. Any failure to make this clear might be made ground for objection and review, but we find no such defect in the statute as to render it void.

It is also objected against the statute that it provides no means for raising the money to pay for the lands taken. This is not, in our opinion, a well-founded objection. The statute (section 18) provides for laying before the city council evidence of the finding, when confirmed. It then provides that the council may, if they believe that a certain part of the city

will be benefited by the improvement, have the whole or any just portion, assessed on that part upon owners and occupants of real estate in proportion as near as may be to the advantages of each lot, which assessment shall be made as is provided in case of grading streets. But by section 16 the council is bound within a year to provide means in some way, and is authorized to do so by borrowing from other funds, or otherwise.

The objections made on the argument all apply to the provisions for laying the tax on a particular section of the city. But as it may be raised by general tax, and must be if not otherwise provided, the invalidity of these special provisions, if they are invalid, cannot affect the other parts of the act. If any special district should be set apart and assessed, the owners of the property so assessed may have occasion for a remedy, but no one else appears likely to suffer.

The sheriff having returned a summons of twenty-four qualified freeholders, the fact that some of the jurors turned out to be incompetent could not affect the whole array, any more than in other cases where challenges lie for incompetency. The jury sworn contained none but resident freeholders, and there is no fraud shown.

We are not satisfied that under such a mortgage as was made by the appellant, including franchises and easements, there was any necessity of bringing in the mortgagees. Nothing but a right of way across the track was condemned and the track is not disturbed, and we discover nothing which would entitle the mortgagees to share in the compensation, so long as appellant has control of the road.

The testimony of Tuttle and Page concerning the amount of compensation which should be given was clearly incompetent. That amount was the very thing which the Constitution refers to the jury, and they must make up their own conclusions from proper data. What data were laid before the jury we have no means of telling, but they had a right, if the charge was correct, and they evidently acted on it, to take the testimony of those two witnesses as a basis for their action, and they seem to have settled the conflict by substantially averaging it.

If counsel for the city correctly interprets the result, the land crossed was reckoned without any reference to anything but its value as isolated. But the statute in question has rightly discarded the term "value," sometimes used in similar statutes, for the term "compensation," which is the constitutional word, and means much more. The damage done to a railroad by having a highway run across it must necessarily include all the additional expense entailed by such a crossing, which in a city may involve a considerable outlay in making the crossing safe, and providing guards against accident. Under the Constitution there must be just compensation, and this cannot be denied by law or by verdict.

How far the action of the city in leading the appellant to lay out money and fix its location on the faith that First street should not be opened would estop the corporation from taking the present proceedings was not so presented or argued that we care to decide it on this record. The fact does not seem to have been brought to the notice of the court until after verdict. It might have been set up on the hearing whether a jury should be summoned, if relied on as a bar, or it might also have been shown on the hearing before the jury, when a proper charge could have been asked, and the court could have put the question in shape to be reviewed here, as a bar, in law, or as a fact negativing necessity, and possibly as bearing on the measure of compensation on account of enlarged expenditure. We give now no opinion on any of these points, as in case of a future hearing the subject can be more directly presented. Had there been no other defect, we might have felt bound to grant a new trial in order to have this defense considered, as counsel by affidavit explained the delay. But as other defects exist it is better to have the facts fully brought in and ruled upon.

We think the Superior Court had jurisdiction, so far as any objections argued before us are concerned, and therefore, in setting aside the verdict with costs, we send the case back for a new trial.

The other Justices concurred.