The City of Detroit v. Luther Beecher and Mary W. Beecher.

*Municipal corporations—Proceedings for opening street—Constitu-tionality of statute—Petition—Verification.—Extension of street—Damages—Necessity of improvement.*

1. Act No. 124, Laws of 1883, as amended by Act No. 48, Laws of 1887, is not unconstitutional in not providing for the payment for the land condemned before it is taken; and said statute, as a whole, provides for such a finding by the jury as the Constitution warrants. *Grand Rapids v. G. R. & I. R. R. Co.*, 58 Mich. 641, 646, 647.

2. In a street-opening case the jury are not precluded from estimating and determining the whole cost of the improvement before they find the necessity for it, and the compensation of the individual owners is to be apportioned afterwards, as a natural sequence.

3. Under a statute providing that the jury in a street-opening case must "ascertain and determine whether there is necessity for taking (the land) for the use or benefit of the public," in order to find such necessity, the jury must determine that the *benefit* to the public will be equal to the *cost* of the improvement, which finding renders the question of local benefits entirely immaterial

and irrelevant, as far as the necessity of the improvement is concerned. CHAMPLIN and LONG, JJ., dissent from this proposition.

4. A petition signed "The City of Detroit, by William S. Sheeran, City Attorney," is a sufficient compliance with a statute requiring it to be signed by said attorney in his official capacity.

5. Under a statute requiring a petition in a street-opening case to be verified by the city attorney, "or by some person having knowledge of the facts," an affidavit of that officer that "the petition is true to the best of his knowledge and belief" is sufficient.

6. The statute in relation to taking land by municipalities in this State does not require any attempt to secure the same by dedication or sale prior to the commencement of condemnation proceedings, which negotiations need not be alleged in the petition; and said statute is not unconstitutional by reason of this omission.

7. A petition stating that the object of a proposed public improvement is the opening and extending of a designated street between two streets, where not already opened, to a certain width, and that, in making and maintaining the proposed improvement, a perpetual right of way over the different pieces or parcels of private property described in the petition will be necessary, and that such right of way is proposed to be used for the purposes of a public street and highway, states fully enough, in "a general way," the nature and extent of the use of the land that will be required in making and maintaining the proposed improvement.

8. A variation of a few degrees in extending a street from its course is not prohibited by law, and is within the discretion of a city, if ratified by the finding of the jury that such course is necessary.

9. In the absence of an ordinance requiring streets to be fenced, a property-owner through whose land one is opened is not charged with such a duty; and, in the absence of evidence showing the necessity for such fencing, the condemnation jury is not warranted in allowing the expense of such fencing as an item of damages.

10. The expense of clearing snow from sidewalks along a proposed city street is not a proper element of damage to be allowed the property-owner through whose land it will pass, and a claim for the cost of grading and paving such street which might be assessed upon his adjoining property is also properly rejected.

11. The "additional expense" to be allowed a land-owner in a street-opening case is that naturally following such opening, like the removal of an existing fence (*City of Detroit v. Beecher*, 69 Mich.——, 37 N. W. Rep. 18), or the necessary expense of a rail-

road company, whose right of way is taken, in making the crossing safe, and providing guards against accidents (*Grand Rapids v. G. R. & I. R. R. Co.*, 58 Mich. 648), which "additional expense" must be real, tangible, and proximate (*Flint & P. M. R. R Co. v. Detroit & B. C. R. R. Co.*, 64 Mich. 350).

12. The charge of the court defining the word "necessity" (see opinion, page 468) is held not erroneous nor misleading.

Appeal from the recorder's court of Detroit. (Gartner, J., presiding.) Argued February 8, 1889. Decided June 28, 1889.

Proceedings to open a street. Respondents appeal. Proceedings affirmed, except as to three parcels, for which nominal damages were allowed, and as to these a new appraisement is ordered. The facts are stated in the opinion.

*Ervin Palmer*, for appellants.

*John W. McGrath*, city counselor, and *Fred H. Warren*, assistant, for petitioner.

MORSE, J. In this case we are asked to review the proceedings, as far as the rights of the respondents are concerned, in the matter of opening and extending Eleventh street from Leverett street to Michigan avenue in the city of Detroit.

The street opening was intended to be conducted under Act No. 124, Laws of 1883, as amended by Act No. 48, Laws of 1887.

In the first place the constitutionality of the law is attacked on several grounds:

*First.* The act is framed so ambiguously that the jury are not required to determine upon the necessity of the proposed improvement, but only on the necessity of taking the land for the improvement, provided the improvement is made as designated.

*Second.* Under the law the jury cannot ascertain whether said improvement is necessary or not.

*Third.* Said act requires the jury to pass upon the neces-

sity of said proposed improvement, without knowing or considering the public or local benefits which will accrue from the proposed improvements.

The *fourth* objection covers nearly the same ground as the third, and the two will be discussed together.

The *fifth, sixth, seventh,* and *ninth* relate to the laying of the tax to pay the cost of the improvement, and the compensation awarded to the land-owners, and under our view of the case need not be stated here.

The *eighth* objection is that the statute does not provide for the payment for the land condemned before it is taken, as provided by section 15, Art. 15, of the Constitution.

This indentical objection has been heretofore considered by this Court in *Grand Rapids v. G. R. & I. R. R. Co.,* 58 Mich. 646, 647 (26 N. W. Rep. 159), and decided to have no merit.

The first objection,—

"That the act does not require the necessity of the proposed improvement to be determined by the jury,"—

Has been disposed of by this Court in *Grand Rapids v. G. R. & I. R. R. Co.,* 58 Mich. 641, 646 (26 N. W. Rep. 161), where it was held that the statute, as a whole, provided for such a finding as the Constitution warrants.

Under the second objection we are referred to this provision of the Constitution (section 2, Art. 18):

"When private property is taken for the use or benefit of the public, the necessity for *using* said property, and the just compensation to be made therefor, . * * * shall be ascertained by the jury," etc.

It is argued that, under sections 7 and 8 of the act, the jury pass upon the necessity of the proposed improvement before they know anything of the cost of the improvement, and that under the Constitution no public necessity can exist for the opening of a street unless the benefit to the public is at least equal to the value of the property taken, and that the oath to the jurors, as prescribed by section 7, and the manner in which they shall make up their verdict, as pro-

vided by section 8, make it the first duty of the jury to determine—

"The necessity for taking such private property for the use or benefit of the public for the proposed improvement, and, in case they find that such necessity exists, they shall [then afterwards] award to the owners of said property, and others interested therein, such compensation therefor as they shall deem just." Sections 7, 8, Laws of 1883, Act No. 124.

It is contended that under these sections the jury are required to determine the necessity for the improvement before they are permitted to determine the cost of the same. We do not so understand the statute. The jury are not precluded from estimating and determining the whole cost of the improvement before they find the necessity of it. The compensation of the individual owners of the property is to be apportioned afterwards, as a natural sequence. It would be out of the natural order to award compensation to the owners before the necessity was established, and the Constitution requires no such absurd method of procedure in street openings.

The third and fourth objections urged are that the act does not require the jury to consider the public or local benefits which will accrue from the proposed improvement.

Under the theory that the law was defective in this respect, the counsel for the respondents requested the court to instruct the jury that they must find that the public benefits must be equal to the cost of said improvement, and that they must find that the benefits which the owners or occupants of real estate in the vicinity of the proposed improvements will receive, and which the common council of the city of Detroit may deem to be specially benefited and may include in a taxing district, equal the cost of said proposed improvement, or they cannot find the said improvement is a public necessity. The court gave the first part of the instruction, as to the public benefit, but refused the second, as to the local benefits.

It is claimed that under this act the jury are only permitted to ascertain the compensation to be paid for the proposed improvement, and are not allowed to consider how much benefit the public generally will receive, or any particular benefit which said improvement will bring to a district in the immediate vicinity of the same, and that without such finding of public and local benefits the necessity for the improvement cannot be constitutionally determined.

We think the act does require the jury to consider the public benefit, and it is not objectionable in that respect. It is true, it does not state in so many words that the jury must find the benefit to the public to be equal to the cost of the improvement, but, when it provides that the jury must " ascertain and determine whether there is necessity for taking for the use or benefit of the public,'' it logically follows under the law as laid down in this State that, in order to find such necessity, the jury must determine that the benefit to the public will be equal to the cost of the work; and under a proper charge from the court they did so find in this case. It looks a little like hair-splitting to contend that every detail of the method by which the jury arrive at such necessity must be set out in the law.

In regard to the question of local benefits, the law, as amended (section 15, Laws of 1887, p. 52), provides that after the condemnation the cost of the improvement may be raised in whole or in part by a general tax, or in whole or in part by a tax upon the owners or occupants of taxable real estate within a taxing district to be fixed by the common council of the city of Detroit,—

" In proportion as nearly as may [be] to the advantage which such lot, parcel, or subdivision is deemed [by the council] to acquire by the improvement.''

If the council do not determine to raise any of the tax upon the theory of local benefits, and the tax is laid generally, there is no occasion for the jury of condemnation to

speculate upon the local benefits in determining the necessity; and, as they cannot well forsee what the common council will do as regards the spreading of the tax to pay for the improvement, we fail to see the object or use of their taking into consideration the local benefits in determining whether or not the land should be condemned. Certainly, if the jury consider, as they were instructed to in this case, the public benefit, and find such public benefit to equal or exceed the cost of the improvement, the matter of local benefits becomes entirely immaterial and irrelevant, as far as the necessity of the improvement is concerned.

We intimated in *City of Detroit v. Daly*, 68 Mich.——(37 N. W. Rep. 15) that the method of assessment of local benefits under this act, after condemnation by a jury, made by the ordinary assessing officers, was the better one, as it prevented the anomaly of different official valuations of the same property.

We find no constitutional difficulty as far as the action of the jury of condemnation is prescribed and set forth in the act.

We do not consider it necessary to discuss the other objections made by respondents' counsel to the constitutionality of this act, as they relate entirely to the possible assessment of benefits by the common council in the raising of the tax to provide for the cost of the improvement; but as the whole cost may be raised by general tax, and must be if not otherwise provided, the invalidity of the special provisions for laying the tax on a particular section of the city, if they are invalid, cannot affect the other parts of the act. If any special district shall be set apart for the purposes of taxation, the owners of the property assessed may have occasion for a remedy, but this cannot affect the proceedings here taken to condemn the respondents' land. *Grand Rapids v. G. R. & I. R. R. Co.*, 58 Mich. 647 (26 N. W. Rep. 159).

We will now examine the errors alleged in the proceeding.

It is claimed by respondents that the petition is incomplete in form, and does not set forth sufficient facts to enable the court to grant the prayer therein contained, or to give the court jurisdiction of the subject-matter of the proceedings.

The defects alleged are—

1. That the petition is not signed by the city attorney in his official capacity.

2. It is not duly verified.

3. The petition does not show, nor does the testimony disclose, any attempt to obtain the consent of respondents to dedicate or sell their land for the proposed improvement, and that such attempt has failed.

4. The petition does not state in a general way the nature and extent of the use of the land that will be required in making and maintaining the improvement, as required by law.

The *first* objection is so purely technical as to have no merit at all. The petition was signed by the city attorney as follows: "The City of Detroit, by William S. Sheeran, City Attorney." The statute provides that the petition shall be filed in the name of the city, and signed by the city attorney in his official capacity. As signed, it is as sufficient a compliance with the law as if it had been signed "William S. Sheeran, City Attorney." Act No. 48, Laws of 1887, § 3.

*Second.* The verification of the petition was by the city attorney, who made oath that he was city attorney; that he had read the foregoing petition by him subscribed, and knew the contents thereof; and that the same was true, to the best of his knowledge and belief. The act requires that the petition "shall be duly verified" by the city attorney, "or by some person having knowledge of the facts." Act No. 48, Laws of 1887, § 3.

It is contended by respondents that the provision that it must be duly verified by some person having knowledge of the facts, if the city attorney does not verify it, imports also that the city attorney must have knowledge of the facts, and that he cannot fulfill the demands of the statute by swearing

that the petition is true "to the best of his knowledge and belief," but that he is required to make oath that the facts stated in the same are known to him, and are true. It is also urged that, in all cases where the statute requires the verification by one having knowledge of the facts, a jurat upon information and belief is not sufficient.

We are cited in support of this claim to *Teachout's Case,* 15 Mich. 346; *Proctor v. Prout,* 17 Id. 473; *Brown v. Kelley,* 20 Id. 33; *Hackett v. Wayne Circuit Judge* 36 Id. 334; *Swart v. Kimball,* 43 Id. 451 (5 N. W. Rep. 635).

All these cases are those in which a *capias* or warrant had been issued upon an affidavit stating the facts upon which the cause of action was based. It has uniformly been held in such cases that the material facts must be shown by the affidavit to be within the knowledge of the affiant, and cannot be stated on information and belief.

The counsel for the petitioner insist that this rigid rule, which is invoked in aid of the personal liberty of the individual, is not applicable to this proceeding; that the verification as made by the city attorney in this case is certainly as strong as he could possibly make it. Nearly all the matters contained in the petition are either matters of public record, pertaining to the action of the common council in the premises, or the statement of the action of some one other than the city attorney himself.

It is argued that this information comes to him through official sources, and, when he, as a public officer, has sworn that the same is true to the best of his knowledge and belief, the same is "duly verified" within the meaning and intent of the statute.

We are inclined to take this view of the question. The act does not in terms provide that the city attorney must swear that he has personal knowledge of the facts, and we know of no good reason for such a requirement. If the petition is verified by some one else, there may be reason why

such person should have knowledge, and so state under oath, but that question is not here.

The only object of this verification must be to secure good faith in the institution of the proceedings, and to protect land-owners from the expense of defending their rights in needless or wanton attempt to condemn their lands; and as the basis of the proceedings, which is to be set out in the petition, is the action of the common council in the first place, declaring the improvement to be a public necessity, and the city attorney, before instituting the proceedings, must be directed to do so by a resolution of the common council, and the certificate of such action of the council attached to the petition is made *prima facie* evidence of the action taken, a verification that the city attorney knows such action to have been taken would seem to be entirely superfluous and unnecessary; and such action would also seem to be a sufficient guaranty of the good faith of the proceeding.

The other facts required to be stated are that the petition is made and filed as commencement of judicial proceedings under the act to acquire the right to take private property for the use or benefit of the public, without the consent of the owners, for a public improvement, designating it, for a just compensation to be made ; also a description of the property is to be given, and generally the nature and extent of the use thereof, which will be required in making and maintaining the improvement, shall be stated, and the names of the owners and others interested in the property, so far as can be ascertained, including those in possession of the premises; that the common council have declared such public improvement to be necessary, and that they deem it necessary to take the private property described in that behalf for such improvement for the use and benefit of the public. See Act No. 48, Laws of 1887, §§ 2, 3, pp. 49, 50.

The same reasons given in *Washburn v. People*, 10 Mich.

372, why the verification of a criminal information filed by the prosecuting attorney upon information and belief was sufficient, would seem to apply with even greater force to this petition. It is filed and signed by a public officer, whose duties as such public officer make him more familiar with the proceedings precedent to the filing of the same, and the facts therein to be stated, than any other person; and yet such a statement of facts is required as would not be often capable of verification upon the actual personal knowledge of any one man. The proceedings before the filing of the same, and necessary before it can be filed, are such that the good faith of the undertaking of the improvement is sufficiently guaranteed, and the land-owners protected against groundless or vindictive proceedings to condemn their lands; and the presumption of good faith also attaches to the act of the public officer in filing the same. We therefore think the verification sufficient.

*Third.* The statute in relation to the taking of land by municipalities within this State, unlike the law in relation to the condemnation of lands for railway purposes, does not require any attempt to obtain the consent of the owners to dedicate or sell their lands for the purposes of the proposed improvement, and that there shall be shown such attempt, and failure to obtain such consent, before the proceedings to condemn shall be instituted; therefore, it is not necessary that the same shall be alleged in the petition; and the act has been declared not unconstitutional because of this omission. *Grand Rapids v. G. R. & I. R. R. Co.*, 58 Mich. 645 (26 N. W. Rep. 159).

*Fourth.* We think the petition states fully enough in a "general way," the nature and extent of the use of the land that will be required in making and maintaining the improvement, as required by law.

It states the object of the improvement to be the—

"Opening and extending of Eleventh street from Leverett

street to Michigan avenue, where not already opened, 60 feet wide; and that in making and maintaining the proposed improvement, a perpetual right of way over the different pieces or parcels of private property hereinafter described will be necessary; and that such right of way is proposed to be used for the purpose of a public street and highway."

It is difficult to see what more is needed to fulfill the requirements of the statute in this respect.

It is urged by the respondents' counsel, in this respect, that the summons notified the respondents that—

" The object of said petition is to open and extend Eleventh street from Leverett street to Michigan avenue, where not already opened, 60 feet wide, for the use and benefit of the public as a public street and highway."

That the law provides that the summons shall "state briefly the object of said petition;" that the testimony showed that Eleventh street, as now existing, was a half mile south of the proposed improvement, and, if the street should be extended northerly on a straight line, it would run about 350 feet east of the proposed street.

The petition, however, contained an accurate description of each parcel of land to be taken for the proposed improvement, and we apprehend that the naming of the proposed street as an extension of Eleventh street was of no moment. The land to be taken was stated, and the jury, under the proceedings, found that it was necessary to take such land for the use and benefit of the public; and what the proposed street was named, either in the petition or summons, was immaterial, if the object and location of the proposed improvement was plainly set forth. The fact that Eleventh street, if continued in a straight line northerly, would be, at the southerly point where the improvement commenced, some 300 or 400 feet to the east of the proposed line in the petition, would not vitiate the proceedings, as we know of no statute compelling the course of a street, when extended, to continue as to direction exactly in the same line of the exist-

ing street.   The variation of a few degrees in this case to
the east or west is not prohibited by law, and is within the
discretion of the city, if ratified by the finding of the jury
that such course is necessary.   It would still be an extension
of Eleventh street.

We will now examine the objections to the charge of the
court.

The counsel for respondents requested the court to instruct
the jury that they were entitled to the cost of building a
fence on each side of the proposed street.   I think the court
correctly instructed the jury that, as there was no ordinance
in the city of Detroit requiring streets to be fenced, it was
not incumbent upon the respondent Beecher to do so.   No
good reason was shown in the testimony why such fences
would be necessary.   The land of the respondent Beecher,
proposed to be taken for the street, had been platted, and
the plat recorded in 1873, into streets, alleys, and city lots.
It is quite common now to use such lots, both for residence
and other purposes, unfenced on the line of streets.   The
jury were certainly not authorized to award Mr. Beecher dam-
ages for fencing his property on both sides of the proposed
street, unless such fencing was shown to be necessary, and no
such showing was made.   As to the matter of sidewalks, the
court left it to the jury to find whether he should have com-
pensation or not for building them.

His counsel claimed that he was not only entitled to this,
but to the expense of cleaning the snow off from the same
for many years to come.   This was very properly not allowed
by the court.

He also insisted upon damages for the cost of grading and
paving the street that would or might be hereafter assessed
upon his adjoining property.   This claim was also rightfully
rejected by the court.   It was not in the power of the jury
to determine what this expense would be, or anywhere near
it, nor yet to know whether or not the street would ever be

paved. The common council might not order the street to be paved; and, if they did, they might order it paved to one width or another, and of one material or another.

The damages for these possibilities of the future are too remote, contingent, and speculative to be determined with any accuracy, nor do we consider that the law contemplates the giving of any such damages, nor does the Constitution require it. All these improvements, in the line of grading and paving and otherwise improving streets, cast burdens upon the land-owners, it is true, but at the same time they enhance the value of their land, and the proportion of increase of value is supposed to equal, if not to exceed, the increased burden; and upon this theory, and this alone, can the land-owner be taxed to grade or pave a street, unless he pays such tax as one of the general public, and not upon the theory of benefits, by which a tax is imposed upon adjoining lands in proportion as they are benefited by the improvement.

The court instructed the jury that they must award to the owners of the land full compensation,—

"Which means that you are to award to the owners of the land the full value of the land to be taken, and all additional expense entailed upon said owners in opening said street."

This charge gave to Mr. Beecher, if followed, all that he was entitled to under the law.

The additional expense covered by the law is the expense that naturally follows the opening of the street, like the removal of a fence already built (see *City of Detroit v. Beecher*, 69 Mich. ——, 37 N. W. Rep. 18), or the necessary work and expense of a railroad company, whose right of way is taken for a street or public highway, in making the crossing safe, and providing guards against accident. See *Grand Rapids v. G. R. & I. R. R. Co.*, 58 Mich. 648 (26 N. W. Rep. 159).

This expense to be allowed as damages must be real, tangi-

ble, and proximate. It cannot be allowed on mere conjecture, fancy, speculation, or imagination, nor can it be remote or contingent on something that may or may not happen, and it must be capable of ascertainment. See *Flint & P. M. R. R. Co. v. Detroit & Bay City R. R. Co.*, 64 Mich. 350 (31 N. W. Rep. 281), and cases cited.

Fault is also found with the charge of the court in his definition of the word " necessity," and it is claimed that his instructions in this respect were misleading and erroneous. The court told the jury in this regard that they—

" Must find from the evidence that the benefits which the public will derive from said proposed improvement will equal the cost of the same, or you cannot find that said proposed improvement is a public necessity;"—

And that, in the language of one of respondents' requests,—

" You must first estimate the land to be taken at its full cash value, and then, if you find the public generally will not be benefited to the amount of said value, you cannot find the improvement to be a public necessity;"—

Also, that it must be a present public necessity, and,—

" With regard to public necessity, the public must be interested. Every part of the public is interested in every other part of the city of Detroit. Anything that tends to beautify, adorn, and make more desirable, as a place of residence or a place of business, one part of the city, adds to the value of the property in every other part, and is a benefit to the city generally. In other words, gentlemen of the jury, every part of the city is interested in beautifying and adorning every other part. You should be satisfied that the benefit to the public will be so great that it can afford to pay the entire expense of opening it, and that the benefit to the public will more than pay for the cost and expense of opening it, and the inconvenience attending it; and, unless you so find, there is no public necessity. You must also be satisfied that the public will be so much benefited that it can afford to pay the damages; and, unless you are satisfied of all these things, it is your duty to declare it to be unnecessary."

We see nothing erroneous or misleading about these instructions.

There were three parcels of land described in the petition for each of which, under the charge of the court, the jury allowed simply nominal damages. One parcel was part of an alley in block 3 of Luther Beecher's subdivision of part of Lognon farm. One parcel was part of Church street, of the same subdivision, and the other parcel was part of an alley in block 2 of the same subdivision.

It appears that Mr. Beecher platted this land in 1873, and part of the plat has been opened to the public. The part of Church street and the alleys condemned and taken under these proceedings have never been accepted by the city in any way. Last year Beecher fenced up Church street where it was not used by the public. He testified that he was ready to open it, and intended to do so when he sold lots upon it.

We think Mr. Beecher was entitled to the full value of these three parcels of land. No one, save himself and wife, had any interest in them.

Something more than a mere offer of dedication by platting is necessary in order to give the public the right of a street or highway. There must be an acceptance on the part of the public; and an acceptance of a part is not an acceptance of the whole. The respondent had the right to fence up Church street where he did, as against the city of Detroit. *Field v. Manchester*, 32 Mich. 281.

The testimony upon both sides is to the effect that the land taken was open to the commons and used as a cow pasture, and the city had never exercised any control over, or done any work upon, that portion of Church street proposed to be taken for the purposes of a street in this proceeding. The city had no title to or easement in this Church street, or either of the alleys upon Beecher's plat, nor is any right

shown in the public that would prevent the closing of them by Mr. Beecher, if he saw fit to do so.

What he intends to do with this land, if certain contingencies occur, is not material. He has a right to keep his property, or to receive full compensation for it if it is taken on the ground of public necessity.

We find no errors in the admission of testimony, nor are we disposed to meddle with the finding of the jury as to the value of the land to be taken, except in the case of the three parcels heretofore mentioned.

The proceedings, therefore, are affirmed, with the exception of the three parcels above mentioned. As to these there must be a new appraisement. The costs of this Court will be given to the respondents.

CAMPBELL, J., concurred with MORSE, J.

CHAMPLIN, J. I concur in the *result* reached by Mr. Justice MORSE, but I desire to express my dissent from the proposition stated in the opinion to the effect that private property cannot be taken for the use of the public unless the benefit to the public will be equal to the cost of the work, or that the jury cannot determine that the public necessity requires the taking of private property for the public use unless they can determine also that the public will be benefited as many dollars and cents as the damages and compensation to individuals are determined to be. I am not aware that this Court has ever enunciated such doctrine.

Under a city charter, where the statute prescribes that the total damages and compensation awarded shall be assessed upon a specified district in proportion to the benefits derived from making the improvement, I can see that the property cannot be taken unless the benefits equal or exceed the damages, or compensation; but this is for the reason that the Constitution provides that private property shall not be taken for the public use unless compensation is first made or secured as.

shall be provided by law; and, if the total damages and compensation exceed the total benefits to be assessed upon the district, it is clear that compensation cannot be made, and the proceedings fail for that reason. It is because in such case the law has failed to provide for compensation, and not because the public necessity does not exist. When the law does provide for the payment of the damages and compensation, the jury need not inquire whether the public necessity for taking or using the property is equal to the compensation to be made.

The public necessity cannot be measured by mere dollars and cents. There is no provision in the Constitution which prohibits private property from being taken for the public use unless the benefit to the public is equal to the damages and compensation to be awarded to the owners of property so taken. Private property may be condemned for the use of the public for court-houses and jails. Must the jury determine that the benefit to the public is equal to the damages and compensation awarded before they can determine the necessity? Private property may be taken for the use of the public for highways. Cannot a highway be opened unless the commissioner first determines that the public benefit equals the damages and compensation awarded? Private property may be taken for public use in the construction of railroads. Must the jury first determine whether the public use or benefit will be equal to the damages and compensation awarded before they can determine the necessity for taking the property for public use? The public necessity cannot be measured by the amount of damages and compensation to be awarded for the property taken. Such a rule would be both impracticable and impossible, of application.

LONG, J., concurred with CHAMPLIN, J.

SHERWOOD, C. J., did not sit.