83 265
83 416

83 265
158 ³613

The Fort-street Union Depot Company v. Mary H. St. Clair Morton et al.

*Union depot companies—Constitutional law—Eminent domain—Oath to jury—Title of act.*

1. The Union Depot Act of 1881 (Act No. 244) is not unconstitutional in that it confers the power of eminent domain upon the corporations organized under it, and the title is sufficient to warrant the conferring of such power.
2. The objection that section 30 of the Union Depot Act of 1881 embraces an object not stated in its title, namely, the establishment, maintenance, and operation of railroads independent of depot purposes, and having no connection therewith, is untenable.
3. The following oath to the jury in condemnation proceedings under the Union Depot Act of 1881 is sufficient, namely, that they would "justly and impartially ascertain and determine the public necessity for taking and using, for the public use, the parcel of land described in the petition in this cause."
4. There is no force in the contention that the Union Depot Act of 1881 does not contemplate more than one union depot in each city or village.

Appeal from Wayne. (Full bench.) Argued October 7, 1890. Decided November 21, 1890.

Proceedings to condemn land for union depot purposes under Act No. 244, Laws of 1881. Respondents appeal from an award of $86,000 in their favor. Pro-

ceedings affirmed, and appeal dismissed. The facts are stated in the opinion.

*Dickinson, Thurber & Stevenson* (*Don M. Dickinson*, of counsel), for respondents.

*F. A. Baker* and *James F. Joy* (*C. B. Lothrop*, of counsel), for petitioner.

MORSE, J. This is a proceeding taken to condemn lands to the public use.

The petitioner is a union depot company, organized under the Union Depot Act of 1881. The property in question in this case is a part of lands and premises claimed by the petitioner to be required for its depot and station grounds. In the court below, a jury rendered a verdict that it was necessary to take the property for the public use, and that the respondents were entitled, as a just compensation therefor, to the sum of $86,000. The respondents appeal to this Court. The grounds of such appeal, as summarized by their counsel, are as follows:

"1. The Union Depot Act of June 9, 1881, in so far as it confers the power of eminent domain, is unconstitutional and void, for these reasons:

" *a*—The proposed use of lands by a corporation which is independent of the railroad laws of the State, and thus is discharged from the obligations imposed by law upon railroad transportation, is not a public use.

" *b*—The act does not confer upon the public at large any right to make use of the proposed passenger depot and freight warehouse, on any terms; much less are the terms for such use to the public defined, so as to be certain, beyond doubt, and without condition.

" *c*—Even if the terms to railroad companies were fixed and certain, railroad companies are not the ' public' contemplated by the Constitution. The use, and the terms for the use, must be for the people at large.

" *d*—The purpose of the act is not stated in its title.

"*e*—The oath for the jury prescribed by the statute does not cover their constitutional duty.

"2. The act does not contemplate more than one union depot in each city or village, and this corporation is not within the clear purposes of the act requiring such companies to provide for all companies entering the city desiring such accommodations.

"3. The testimony in the case clearly shows that there is no necessity for taking this property for the public use, and there is no legal evidence to the contrary."

The main argument against the constitutionality of the act conferring the power of eminent domain upon these companies (see Laws of 1881, p. 320; How. Stat. p. 888) is based upon the proposition that they must acquire such power entirely from the act itself; that the union depot company is not a railroad company; it is not a common carrier; it is a new artificial person, deriving all its rights and powers, and finding absolutely all its obligations, in this, its organic act. Therefore, it is argued, it is clearly independent of, and not affected by, the body of the railroad laws and amendments embraced in chapters 91 and 92, How. Stat., which confer rights and privileges upon railroad companies, and also provide certain and clearly-defined reciprocal duties to the people, the imposition of which duties by law is the criterion which makes the use for railroad purposes a public one. It may be admitted for the purposes of this case that so far the contention of counsel is correct, and that we must look to the act itself to support the claim of the company to the right to acquire lands by condemnation for public use.

But, going further, the counsel also claim that in this act nothing can be found conferring upon the public at large any rights in the contemplated passenger depots and freight-houses; that the people at large—the common public—are given by this statute no fixed and definite

rights in these depots; and that there is nothing to prevent the companies organized under it from charging what they please for depot services to the public at large. It is said that the provisions of the statute apply only to dealings between the depot companies and the railroad companies who may use the property of the former companies; that this company, for instance, "may shut its doors against the approaching passenger unless he pays its price to go in;" and that "there is nothing in the act to compel it to open its passenger depot or its freight-house at all to the community in which it is proposed to erect this structure;" that the act only provides for those entering the same by the railroads that terminate or connect with it.

The argument is, if we understand it, that the public at large have no rights specified by the act unless they act and use the same under the privileges granted to the railroads. It appears from the record that the Fort-street Union Depot Company was organized for the purpose of furnishing depot and terminal facilities for four different railroad corporations, and for all other railroads that may hereafter desire admittance thereto. The four companies now interested are the Flint & Pere Marquette Railroad Company, the Detroit, Lansing & Northern Railroad Company, the Wabash Western Railroad Company, and the Canadian Pacific Railroad Company. It would seem that a depot built to accommodate all the railroads coming into Detroit, or any considerable number of them, and to be used by them for the same purposes that any one railroad company would use its own single depot, would be when so used, without question, put to a public use, as it has long been settled that a railroad company may acquire, by the right of eminent domain, grounds for its depots and station-houses; and this right is not questioned by the counsel for respondents. The

act (section 6) confers, in express terms, this right upon companies organized under it, and provides that such right shall be exercised, and title acquired to the lands sought, in the manner and by the special proceedings prescribed in the act. How. Stat. § 3463. Section 28 of the act provides that—

" All companies formed under this act shall, for a reasonable compensation, provide suitable depot accommodations for the passengers and freight of the railroads terminating or connecting with it, or desiring access thereto; and shall provide suitable tracks therefor without discrimination in favor of or against any of such roads. If the corporations cannot agree upon the terms and conditions upon which such accommodations shall be furnished, and the business transacted, the Commissioner of Railroads shall determine the rate of compensation to be paid for the accommodations required, which shall be uniform to all such railroad companies; but no such rate shall be fixed as will reduce the net annual income of the business of said company to less than seven per cent. on the cost of the property so used.

" SEC. 29. Companies formed under this act shall not at any time charge or receive for warehouse or elevator service or use more than the average rates then prevailing at the cities of Toledo, in Ohio, and Port Huron, in Michigan; for like service or use.    *    *    *    *

" SEC. 30. Any union railroad station and depot company may, and whenever it is expedient and such trains will pay the expenses thereof, *shall*, put on local passenger trains to do a local and suburban passenger business, and for such local business upon or to the end of its tracks shall be entitled to charge for each passenger not exceeding four cents per mile; and upon the application of any ten suburban citizens for the establishment of such trains, unless the said company comply with the request, it shall be, upon the same request to the Commissioner of Railroads, competent for him to investigate and determine whether such trains shall be established, and, if in favor thereof, it shall be the duty of such company to establish and maintain them so long as he shall require it to be done." How. Stat. §§ 3485–3487.

It seems to me that the rights of the public to use the depots of these companies, their freight-houses and elevators, and, in certain cases, their trains, which under certain conditions they must operate, is fixed, definite, and certain. The public at large have the same rights in them as they have in the depots and freight-houses and cars of railroad companies in this State; and the representative of the public, the Commissioner of Railroads in this State, is given powers of control and regulation over them. Their charges must be reasonable, and the maximum is under State control, as in the case of railroads. No additional charges can be imposed upon the public by any railroad company contracting with the union depot company, by reason of its agreement with such depot company, while the public is benefited, as well as the railroad companies, by increased facilities of travel and transportation. That a union depot like the one sought to be established by the petitioner in the city of Detroit would be of great and incalculable public benefit, no one who reads this record can doubt. The act stamps the property to be taken with a public character, and imposes upon it a trust for the public use, which cannot be divested by any act of the corporators of the company. The law of its existence plainly prevents it from becoming a mere private corporation, or from disregarding its public uses.

The title of the act is as follows:

"An act to authorize the incorporation of companies for the construction of union railroad stations and depots, with the necessary connecting tracks and the management of the same."

It is contended that the title is not sufficient to warrant the authority given in the body of the act to acquire land by condemnation for public use; and, secondly, that section 30 of the act embraces an object not stated in

the title,—to wit, the establishment, maintenance, and operation of railroads independent of depot purposes, and having no connection with such purposes. Neither of these objections to the title is good. The acquiring of land is a necessary precedent to the construction of depots and railroad tracks, and the means by which it is to be acquired, and the power granted to acquire it, need not be stated in the title; and the operation of local trains, under section 30 of the act, is confined to its tracks. This object is stated in the title as follows: "With the necessary connecting tracks and the management of the same." And the building of these tracks in connection with the depot, and the running of trains upon them, are all a part of the same general object as the construction of the depots and station-houses of the company, to wit, the increasing of the facilities and comforts of travel and transportation of passengers and freights.

It is further contended that the oath for the jury, as prescribed by the statute, does not cover their constitutional duty. The statute (section 9) provides that the jury—

"Shall take and subscribe an oath that they will justly and impartially ascertain and determine the necessity of taking and using any such real estate or property for the purposes proposed." How. Stat. § 3466.

Section 3464 (section 7 of the act) provides that the petition filed for the purpose of acquiring such lands must state, among other things,—

"That the property described in the petition is required for the purposes of its incorporation, and that the taking thereof is necessary for public use." p. 493.

The oath actually taken by the jury was that they would—

"Justly and impartially ascertain and determine the public necessity for taking and using, for the public use, the parcel of land described in the petition in this cause."

We think the whole act taken together requires that the oath to the jury should be that they will determine the necessity of taking the land for public use; and, as such was the oath taken here, the law has been fully complied with. The act is not unconstitutional, as How. Stat. §§ 3464, 3466, taken together, require the oath of the jury to be as it was in this case. *Grand Rapids v. Railroad Co.*, 58 Mich. 646; *East Saginaw & St. Clair R. R. Co. v. Benham*, 28 Id. 459.

Nor do we think there is anything in the point made that the act does not contemplate more than one union depot in each city or village. We find no warrant in the act for such contention. We think, also, that the question of the necessity was properly determined under the evidence by the jury, and we have no disposition to interfere with their award of damages.

It is clear to us that the jury were right upon both of these questions, and the proceedings will be affirmed, and the appeal dismissed, with costs of this Court.

The other Justices concurred.