THE KANSAS CENTRAL RAILROAD COMPANY v. THE BOARD OF COMMISSIONERS OF JACKSON COUNTY.

PUBLIC HIGHWAY, *Established Across Railroad Track—Measure of Damages.* Where a public highway is located and established across a railroad company's right-of-way, the railroad company is entitled to just compensation for all its necessary expenditures in constructing cattle-guards, and such other things as are required by the statutes to be constructed by the railroad company by reason of the highway.

*Error from Jackson District Court.*

THE opinion contains a sufficient statement of the facts.. Judgment for the defendant *County Board*, at the June term, 1888. The plaintiff *Railroad Company* brings the case here.

*A. L. Williams, Chas. Monroe*, and *R. W. Blair*, for plaintiff in error.

*Rafter & Robinson*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The present case, as made in the district court and brought to this court, is a model of brevity, containing only two pages as copied by a type-writer, and yet it contains all that is necessary to present the questions sought to be presented by the parties. It appears that the Kansas Central Railroad Company, which is the plaintiff in error and was the plaintiff below, is a railroad corporation of this state; that a public county road was legally laid out and established across its right-of-way; that at the time this was done, the railroad was operated by the Union Pacific Railway Company, another duly-organized railroad corporation of this state, as lessee; that no notice was ever given to the plaintiff with respect to any of the proceedings for the establishment or creation of this highway prior to its creation, though a proper notice was given to the Union Pacific Railway Company with respect thereto. Within twelve months after the location of this highway, the plaintiff filed with the board of county commissioners of Jackson county, which is the defendant in error and was the defendant below, its application for damages claimed to have been sustained by reason of the location and opening of the aforesaid road, which application was in due form and for an amount exceeding $150. The application was refused, and the plaintiff in due time appealed to the district court, where the case was tried before the court without a jury.

"Upon the trial it was agreed by the parties that it would

cost the plaintiff the sum of $150 to put in, at said crossing, the cattle-guards, fences, crossing-planks, crossing-signs and whistle-posts, as required by the laws of Kansas to be put in by the railroad company at every highway crossing of a railroad in the state of Kansas; and that, if the plaintiff was entitled to recover damages, that judgment should be for $150. It was admitted by the parties on the trial that the plaintiff is a railway corporation duly created and existing under the laws of the state of Kansas, and had lawfully condemned the right-of-way for and built and completed its railway at the place where this highway crosses its track prior to the location of such highway; that plaintiff's railway is operated by the Union Pacific Railway Company, a corporation duly organized, which is the lessee of the Kansas Central Railroad Company. It was also proved on the trial that no notice of the meeting of the viewers to lay out said road was ever served upon the plaintiff or any of its agents, and that no copy of such notice was on file in the office of the clerk of Jackson county. All the facts hereinbefore stated were agreed upon by the parties at the trial."

Upon these facts, the court below found generally in favor of the defendant and against the plaintiff, and rendered judgment accordingly, and the plaintiff, as plaintiff in error, brought the case to this court for review.

We think the court below erred in its findings and judgment. A railroad company's right-of-way is property, an estate in land, the dominant estate, securing to the railroad company the *exclusive* right to the occupancy, use and control of the property as against all persons, except the owner of the fee; and the *paramount* right to such occupancy, use, and control, even as against him. (*K. C. Rly. Co. v. Allen*, 22 Kas. 285.) In all cases where a railroad company procures its right-of-way under the authority of the state, in the exercise of its sovereign power of eminent domain, by what are usually termed condemnation proceedings, the railroad company pays to the owner of the land the full value of all the land actually taken, and full and complete compensation for all the losses or damages which might result to the remainder of the owner's land, and both such value and compensation are paid by the railroad company irrespective of any benefit or supposed bene-

fit which might result to the owner of the land from the construction or the operation of the railroad. (*L. & W. Rld. Co. v. Ross*, 40 Kas. 598; *Rapid Transit Rly. Co. v. Simpson*, just decided.) And the railroad company, in paying this value and for these damages, always pays largely more in the aggregate than the land actually taken is worth — sometimes ten or twenty times more than it is worth. And while the railroad company procures its right-of-way through the intervention of the state in the exercise of its sovereign power of eminent domain, and procures the same ostensibly for public purposes — and land can never be taken under such power for any other than a public purpose — yet the railroad company alone pays for such right-of-way, and sometimes, as before stated, pays an amount aggregating ten or twenty times more than the land actually taken is worth. And although the property is taken ostensibly for a public purpose, yet all the authorities agree that the railroad company, by procuring its right-of-way and paying for it, procures an actual, individual, private right, an easement, and an estate paramount to the rights or interests of all others, except the right of the state to again subject the land to be taken under the power of eminent domain. The railroad company in such a case is the dominant owner, and the owner of the fee is only a servient owner. It, therefore, necessarily follows, that any person who should interfere with the railroad company's occupancy, use or control of its right-of-way, except with the authority of the railroad company, or in subserviency to its rights, or under the sovereign power of eminent domain, would be a trespasser, liable to the railroad company for all damages that might result from the trespass. And it would also seem to follow, that where the interference is under the sovereign power of eminent domain, and the railroad company sustains substantial loss from such interference, the railroad company would be entitled to just compensation for all such loss. Certainly, whenever the railroad company's right to the exclusive occupancy, use and control of its right-of-way is interfered with permanently under the power of eminent domain, something is taken from the railroad com-

pany. Of course, it is not the fee in the land that is taken, for the railroad company does not own the fee, nor is the fee, under our present laws, ever taken from any one under the power of eminent domain. What is taken in such a case is a portion of the railroad company's exclusive right to the oc-cupancy, use and control of its right-of-way, a part of its ease-ment, and making it a tenant in common with some other person, corporation, or the public. This is certainly a taking of something from the railroad company which is valuable. It is a taking of a portion of the railroad company's estate, for which it has paid full and ample compensation, and for the taking of which it is entitled to compensation. Where a rail-road company is compelled by condemnation proceedings to surrender the use of a portion of its right-of-way in part to another railroad company, all the authorities agree that something is taken from the railroad company, and that just compensation should be awarded to it. And nearly all the authorities agree that where the railroad company is com-pelled to surrender the use of a portion of its right-of-way in part to the public for a public highway, something is again taken from it for which it is also entitled to fair and just compensation. It is true that where a highway is established by proper authority across a railroad company's right-of-way without at all interfering with the company's use of its right-of-way, and without requiring the company to be at the ex-pense of constructing crossings, or cattle-guards, or erecting fences or signs or whistle-posts, or being at any other expense or suffering any substantial loss, no compensation can be al-lowed; but where any real or substantial loss is suffered, or damage sustained, the railroad company may have adequate compensation. In Mills on Eminent Domain, § 33, the fol-lowing language is used:

"Sec. 33. The laying of a highway across a railroad track is considered an additional burden in those states where the law imposes upon the railroad company the additional expense of erecting and maintaining signs at the crossings, of erecting and maintaining cattle-guards, and of flooring the crossings

and keeping the planks in repair. These expenses, being directly imposed, must be paid for. In New York and Pennsylvania the laying of highways across the tracks of railroads may be done without compensation, and the railroad company may be compelled to make the necessary excavations, embankments, and bridges to safely accommodate the highway. This authority would not include the opening of roads through grounds used for necessary buildings, yards, etc., although it was suggested in Pennsylvania that a street might be opened through depot grounds, and that the wisdom of such action could not be questioned by courts."

In Lewis on Eminent Domain, § 491, the following language is used:

"In New York a statute has been held valid which authorizes the laying out of highways over the tracks of a railroad without compensation, and although it compelled the railroad company to make the necessary excavations or embankments to take the highway across. This is put upon the reserved power to repeal, alter, or amend the incorporation acts. The act in question only provided for crossing the 'track' of any railroad, and it was not held to apply to grounds taken for a station-house, etc., or to tracks used simply for storing cars. Substantially the same ruling has been made in Maine, though the right to repeal, alter, or amend the charter was not reserved. In other states it is held that, in such cases, the railroad company is entitled to compensation for taking its land for a highway subject to its right to use the same for railroad purposes, and to such a sum as will enable it to make and maintain the crossing with suitable signs, cattle-guards, planking, etc. Nothing can be allowed on account of the possibility of the company being compelled to pay damages for accidents at the crossings, and evidence of what the company has paid for accidents at other crossings is incompetent. Nor can anything be allowed for the expense of ringing a bell at the crossing, nor in view of the contingency of its having to build a bridge."

In Redfield on Railways, sixth edition, star page 40, number 13, the following language is used:

"A railway corporation is entitled to damages for land taken by laying a public highway across its line, and for the expense of maintaining signs and cattle-guards at the crossing, and of

46 — 45 KAS.

flooring the same and keeping it in repair; but not for any increased liability to accidents, for increased expense of ringing the bell, or its liability to be ordered by the county commissioners to build a bridge for the highway over the track. And in assessing damages, in such a case, no supposed benefits from an increase of travel on the railway can be set off against the company."

In Pierce on Railroads, page 193, the following language is used:

"The laying out of a highway across land of a railroad company which is used for a station, or for other purposes than a right-of-way, is a taking of its property entitling it to compensation. So, also, it is entitled to compensation where the highway appropriates lengthwise a part of its right-of-way. The laying out of a highway across the company's track, without further interference with it, is, however, not a taking of its property. The state, in authorizing the crossing, simply regulates and adjusts private rights with reference to public interests, and exercises its reserved police power. The crossing should be laid in a manner to cause as little injury as possible to the previous use, and the railroad company is entitled to compensation where the crossing is so constructed as to result in serious inconvenience."

In 6 Am. & Eng. Encyc. of Law, pp. 554, 555, the following language is used:

"When a highway is laid out by the proper authority across a railroad company's right-of-way, this is not such a taking of property as entitles the company to damages; but where the company is required to erect sign-posts and maintain the crossing, there is in such case a taking for which compensation must be made. Where a railroad company constructs its track across a turnpike, compensation must be made to the turnpike company. The owner of property which abuts upon a highway cannot recover damages for the mere crossing of the highway by the tracks of the railroad; but if his property is injured by change of grade made for the purpose of laying said track, he can recover. Where one railroad company is authorized to run its track over the land of another, this is a taking for which compensation must be made."

Also, as in favor of the doctrine that railroad companies

may recover compensation in such cases, see the following cases: *O. C. & F. R. Rld. Co. v. Plymouth Co.*, 80 Mass. (14 Gray,) 155; *Crossley v. O'Brien*, 24 Ind. 325; *D. M. & T. Rld. Co. v. City of Detroit*, 49 Mich. 47; same case, 12 N.W. Rep. 904; *Grand Rapids City v. G. R. & Ind. Rld. Co.*, 58 Mich. 641; same case, 26 N.W. Rep. 159; *C. & G. T. Rly. Co. v. Hough*, 61 Mich. 507; same case, 28 N.W. Rep. 532; *P. & R. Rld. Co. v. Deering*, 78 Me. 61; same case, 23 Am. & Eng. Rld. Cases, 51; same case, 2 Atl. Rep. 670; *Kansas City v. Kansas City Belt Rly. Co.* (decided by the Supreme Court of Missouri, December 1, 1890), 14 S. W. Rep. 808. The following cases possibly hold a different view: *Rly. Co. v. Sharp*, 38 Ohio St. 150; *B. & A. Rld. Co. v. President, etc., of Greenbush*, 5 Lans. 461. In the case of the *C. & G. T. Rly. Co. v. Hough*, ante, it was decided as follows:

"Where a highway is laid out across a railroad, the railroad company is entitled to include in its damages to be paid by the township the expense of cattle-guards, fencing and other outlays to complete the approaches, besides the cost of maintaining them; and a statute which imposes *this* expense upon the railroad company is in conflict with the constitutional provision forbidding the taking of private property without 'just compensation.'"

The principal objections urged against the right of the railroad company to receive compensation for its losses, in cases where a public highway is laid out across its track, are the following: First, it is claimed that the railroad company obtains its right-of-way through the intervention of the state and by the exercise of the state's sovereign power of eminent domain, and, therefore, it must be presumed that the state reserves to itself the right, or, in other words, creates the right, to take a portion of such right-of-way at any time afterward for any other public purpose without any compensation to the railroad company. Second, it is also claimed that no substantial damages are suffered by the railroad company, except by its expenditures in the construction of cattle-guards, fences, signs, etc., and that the duty of constructing these things is

imposed upon the railroad company under the police power of the state, and, therefore, that the railroad company cannot receive any compensation for their construction.

It is true the railroad company obtains its right-of-way under the authority of the state, and by virtue of the exercise of the sovereign power of eminent domain, but the railroad company pays for all the property which it procures, and the state pays nothing. Indeed, as a general rule, the railroad company pays vastly more than all the property which it actually receives is worth, paying not only the actual value of the land taken, but also all the damages supposed to result to that not taken; and all this without deducting anything fo benefits received; and no one else pays anything. Of course the state continues to hold the power to take the property again for some other public purpose, as for a right-of-way for another railroad company or for a public highway; for this power, that is, the power of eminent domain, is inherent in the state, inalienable, permanently existing, inexhaustible, and extends to all property, and the state could not deprive itself of such power by anything it might do. But there is nothing in law or in reason that would even intimate that the state would desire to retake the property for another public purpose without fair compensation to the railroad company, even if it could do so. When the state takes a portion of a railroad company's right-of-way for the right-of-way for another railroad company or for a highway, it takes it just as it takes any other private property, and the railroad company which suffers the loss should receive just compensation.

Whether the duty imposed upon the railroad company of constructing cattle-guards, fences, signs, etc., can be or is imposed upon it under the police power of the state, makes no difference in this case. If the highway should not be established across the railroad company's right-of-way, then it would not be necessary for any of these things to exist; but if a highway is so established, then the duty under the statutes immediately springs into existence, requiring the railroad to so construct these things. The establishment of the highway

is therefore the cause of all these additional burdens being imposed upon the railroad company. And must the railroad company bear these burdens and suffer these losses without compensation? Why should it be treated differently from others who have interests in real estate? All others having interests in real estate are entitled to compensation for losses resulting from the location of a public highway interfering with their free and rightful use of such interests. (*Comm'rs of Smith Co. v. Labore,* 37 Kas. 480, 484, *et seq.*) And why should not a railroad company be entitled to compensation for losses in like cases? With reference to all the public highways existing at the time when the right-of-way for any railroad is procured, and which might affect the location of the railroad, the railroad company has notice, and therefore has notice with reference to what cattle-guards, etc., it must construct when it constructs its railroad; and it constructs its railroad with the understanding that it must make all the necessary expenditures for the construction of such cattle-guards, etc. But with respect to highways not already established when the right-of-way is procured, there can be no such understanding.

We think a railroad company may recover in a case like the present, for all expenditures it is required to make under the statutes by reason of the location of a highway across its right-of-way. With regard to notice, the notice to the Union Pacific Railway Company was no notice to the plaintiff.

*Highway established across railroad track; company may recover damages.*

The judgment of the court below will be reversed, and the cause remanded for further proceedings.

HORTON, C. J., concurring.

JOHNSTON, J., dissenting.