could not take any benefit from any proof tending to show the contrary.

We are, therefore, of opinion that the defendant was improperly convicted, and that the judgment should be reversed and a new trial ordered.

All concur, except RUGER, Ch. J., ANDREWS and MILLER, JJ., dissenting.

Judgment reversed.

In the Matter of the Application of the WATER COMMISSION-ERS OF AMSTERDAM to Acquire Title to Lands.

A statute authorizing the taking of private property against the owner's consent must be strictly construed; and while the property and the estate to be taken, whether an easement or a fee, and the purpose to which it is to be applied, may be designated in the statute, it must be by unequivocal words, and all the prescribed requirements must be strictly observed.

The act providing for a supply of water in the village of Amsterdam (Chap. 101, Laws of 1881, as amended by chap. 197, Laws of 1882) authorizes and requires the taking of a fee in the lands required for the purposes of the act.

A petition presented under said act stated that the petitioner had caused a survey and map of the land intended to be taken and entered upon for the purposes of the act, to be made and filed; that the real estate was described in a schedule annexed, and that " with a view of acquiring the title to, and right to use said real estate," they prayed for the appointment of commissioners of assessment. The schedule stated the right sought to be acquired thus: " The right to enter upon and use the following described land for the purpose of conducting water through and across said lands." Commissioners were appointed, and on the hearing before them the owners offered to prove " the fair market value of the remaining portion of this farm after the water commissioners became seized in fee of this strip." This was objected to, and objection sustained. The petitioners, on the other hand, were permitted to show the value of the farm " upon taking therefrom the right or easement to enter upon the strip proposed to be taken,    *    *    *    and lay therein conduit-pipes for water, with the permanent and perpetual use for that purpose." The commissioners reported a small amount as damages " by reason of the taking  * . *  *  of the right to enter upon and use the said real estate for the purpose of conducting water through and across

the same." This report was confirmed. *Held*, that the rulings of the commissioners and the report were erroneous; that not only the express language of the act required the taking of a fee, but the use for which the land was to be taken was necessarily exclusive and permanent, and its appropriation by virtue of the proceedings is made as complete and exclusive by declaring that purpose as if the words of the statute had been followed in the order, and if the commissioners acquired the interest stated in the order the owners would be divested of the right to use or enjoy their lands without that just compensation to which they were entitled.

(Argued June 3, 1884; decided June 24, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made July 2, 1883, which affirmed an order of Special Term, confirming the report of commissioners of assessment.

The material facts are stated in the opinion.

*John M. Carroll* for appellants. Assuming that the water commissioners were by the act in question authorized in their discretion forcibly to take either a fee or an easement in the lands, as is claimed by the respondents, they have by this proceeding taken the fee, not a mere easement. (Laws of 1881, chap. 101, p. 134, §§ 3, 4, 5; *People* v. *Smith*, 21 N. Y. 595, 597, 598, 599; *In re Fowler*, 53 id. 60, 62; 15 Barb. 627–641; 2 Barb. Ch. 497, 498; *Baker* v. *Johnson*, 2 Hill, 342, 347; *People* v. *Hayden*, 6 id. 360, 361; *Rexford* v. *Knight*, 11 N. Y. 308, 312; *Turrell* v. *Norman*, 19 Barb. 263, 206; *Teft* v. *City of Buffalo*, 82 N. Y. 204, 213; *Sweet* v. *B.*, *N. Y. & P. R. R. Co.*, 79 id. 243, 301; 2 Wash. on Real Prop. m. p. 622, § 23, note 2; 79 N. Y. 293.) The claim of respondents' counsel that the words "seized in fee," used in section 6 of said act of 1881, are applicable to a mere easement or privilege cannot be maintained. (*Nellis* v. *Munson*, 24 Hun, 576–7; *Sweet* v. *B.*, *N. Y. & P. R. Co.*, 79 N. Y. 301.) These commissioners having adopted an erroneous principle in taking testimony and estimating damages, their appraisal should be set aside. (*Matter of L. & W. R. Co.*, 29 Hun, 1, 5, 6.) The water commissioners are not authorized by the statute to take

such an easement only as a separate interest in lands. They are required to take title in fee to the lands over which they construct their works. (*Sweet* v. *B., N. Y. & P. R. R. Co.*, 79 N. Y. 293, 299, 300; *Heyward* v. *Mayor, etc.*, 3 Seld. 314, 325; 8 Barb. 486, 490; *Matter of Fowler*, 53 N. Y. 62; *People* v. *Smith*, 21 id. 595, 598; *Van Rensselaer* v. *Poucher*, 5 Denio, 40, 41; 2 R. S. 722; Bouvier's Dictionary, "fee-simple" and "seizin.") An easement is not a title or estate in lands, but a mere privilege, an incorporeal right which is in its nature intangible and incapable of being the subject of livery. (*Nellis* v. *Munson*, 24 Hun, 575–6; 2 Washburn on Real Property, 25, §§ 3, 4; *Sweet* v. *B., N. Y. & P. R. R. Co.*, 79 N. Y. 301.) The word "fee" has a clear, definite and legal signification and is wholly inconsistent with the claim that an easement in the land only was authorized to be taken. (79 N. Y. 300, 301.) An easement only may not be taken where the statute expressly provides for taking the title and declares that the corporation shall become seized in fee of the property required. (*Brooklyn Park Com.* v. *Armstrong*, 45 N. Y. 234, 242.) The commissioners, therefore, erred in awarding damages only for the use of the land taken. (*Riker* v. *Mayor, etc., of N. Y.*, 3 Daly, 174, 175; *Hill* v. *Mohawk & H. R. R. Co.*, 5 Denio, 205, 209; 7 N. Y. 152.) Evidence as to the manner of digging the trench, laying pipes, etc., was improper and was calculated to mislead the commissioners and affect their award, and it doubtless did so, from the meager sum awarded. (*In re N. Y. & W. S. & B. R. Co.* v. *Bell*, 28 Hun, 426–428.) The errors must be corrected on this appeal or the owners are without remedy. This is expressly declared by section 6 of the act. In any other or collateral suit or proceeding the court will assume that the damages have been assessed according to the legal rights of the parties. (*Kyle* v. *A. & R. R. R. Co.*, 2 Barb. Ch. 489–499.)

*M. L. Stover* for respondents. Property is the right and interest a man has in lands and chattels to the exclusion of others. (6 Binn. [Penn.] 98; 4 Peters, 511; 17 Johns. 283; 11 East, 290, 518; 14 id. 370.) A fee is defined by Spellman

(Feuds, C. 1) as a right which the tenant or vassal had to the use of the lands while the absolute property remained in a superior. This early and strict meaning of the word speedily passed into its modern signification of an estate of an inheritance. (2 Blackst. Com. 106 ; 1 Washburn on Real Prop. 514; 3 R. S. [Banks' 7th ed.] 2175.) The term may be used of other property as well as lands. (Old Nat. Brev. 41.) The word "fee" is explained to signify that the land or other subject of property belongs to its owner, and it is transmissible in the case of an individual to those whom the law appoints to succeed him, and in the case of corporate bodies to those who are to take on themselves the corporate function, and from the manner in which the body is to be continued, are denominated successors. (1 Coke on Littleton, 271 ; 2 Blackst. Com. 104, 107.) In this case a fee is not necessary, and had the petitioners, on their application for the appointment of commissioners of assessment, asked to have the absolute fee-simple of the land itself, the petition could have been denied for the reason that an easement only was necessary for the purpose of their incorporation, and hence only an easement could be taken. (Mills on Em. Dom., § 49; *Washington Com.* v. *P. P. & C. I.*, 68 N. Y. 591 ; *Brooklyn P. Com.* v. *Armstrong*, 45 id. 234.) It was not absolutely necessary that the petition should describe the manner of use of the easement or the extent thereof. If the extent of the easement was definite, its extent might be fixed by the use made thereof. (Goddard on Easement, 276 ; *Outhank* v. *L. S. & M. S. R. R.*, 71 N. Y. 194 ; *Jameson* v. *Wallace*, 11 Gray, 423.) The evidence showing the plan upon which the work was to be built was properly received. (Mills on Em. Dom., § 180.)

DANFORTH, J. The commissioners appointed under the act of the legislature providing "for a supply of water in the village of Amsterdam * * * " (Session Laws of 1881, chap. 101, as amended by Laws of 1882, vol. 1, chap. 197), presented their petition to the Supreme Court, and thereby represented that they had caused a survey and map of the land intended to

be taken and entered upon for the purposes of the act to be made and filed; and " that the real estate, tenements, property and rights described in the schedule thereunto annexed, and forming a part of the petition, are required therefor; that they are unable to agree with the person or persons owning or having an interest in said lands, tenements, rights and property, for the reason that the said party or parties refuse to sell or allow the use of the same for any reasonable compensation; that they, therefore, with a view 'of acquiring the title to and right to use said real estate, tenements, property, rights and interest, for the purpose aforesaid, pray for the appointment of commissioners of assessment to determine the damage sustained by each of the persons described and named in the schedule thereto annexed."

The schedule referred to was in these words: " The right to enter upon and use the following described lands for the purpose of conducting water through and across said lands from McQueen creek to Bunn creek, and laying down pipes or other suitable conductors for that purpose in connection with the system of water-works to be constructed for the village of Amsterdam.

All that certain piece or parcel of land thirty-three feet wide, at right angles, the center line of which is as follows: ' Beginning at a point in the center of the highway leading along the west bounds of lands of John C. Chalmers, said point being station eighty-nine of the survey of the conduit from McQueen creek to Bunn creek, Amsterdam water-works, and running thence south, forty-nine degrees fifty minutes east, to station ninety-two; thence on a curve to the right of two hundred and fifty feet radius to station ninety-five; thence south, one degree west, to station one hundred; thence on a curve to the left to station one hundred and three; thence south, fifty-one degrees thirty minutes east, to station one hundred and three by fifty-five, and to the division line between the lands of John C. Chalmers and Stephen Sanford, and containing one and ten-hundredths acres of land. The stations above referred to being one hundred feet apart.'

Names and Residence of Parties Interested.

John C. Chalmers, Amsterdam, N. Y., owner of the premises described. Gertrude Chalmers, wife of John C. Chalmers, who has an *inchoate* right of dower in the premises."

Notice was given to these persons that upon this petition an application would be made to the court for the appointment of commissioners of assessment as prayed for therein. The application was successful, and upon the hearing before the commissioners it appeared that the land above described was thirty-three feet in width, in length fifteen hundred feet, extending south-easterly across the farm of Chalmers, dividing it unequally. While testifying in his own behalf he was asked to state "the fair market value of the remaining portion of this farm after the water commissioners became seized in fee of this strip." The question was objected to on the ground that it was incompetent, improper and immaterial, and because there "is no authority for assuming that the water commissioners will become seized in fee of the premises." The objection was sustained. Similar questions were put to witnesses called by the owner, but excluded.

On the other hand witnesses for the petitioners were asked by them as to the value of the farm; "upon taking therefrom the right or easement to enter upon the strip proposed to be taken for the conduit, and lay therein conduit pipes for water, with the permanent and perpetual use thereof for that purpose, with the right to enter it at such times as might be necessary to make repairs and to maintain the conduit." This was objected to by the owner (1) "as assuming a state of facts not authorized or warranted as to the rights and property sought to be acquired by this proceeding;" "(2) that the petitioner seeks to acquire and will acquire and become seized in fee of the strip of land in question, and the only rule of compensation is the sum the farm will be worth less than it now is by reason of the village of Amsterdam being seized in fee of the strip." Similar questions were put to other witnesses and allowed to be answered. To these rulings exceptions were duly taken.

The commissioners of assessment reported a small amount as damages sustained by the owner of the real estate described in the petition " by reason of the taking by the water commissioners of Amsterdam of the *right to enter upon and use the said real estate* for the purpose of conducting water through and across the same, and laying down pipes or other suitable conductors for that purpose, in connection with the system of water-works to be constructed for the village of Amsterdam," adding in their report, the " Following is the *property sought to be acquired* by said water commissioners of Amsterdam in said proceeding, and for which said compensation is awarded. The right to enter upon and use the following described lands as above stated," and then describing by metes and bounds as in the petition, the strip above referred to.

The report was excepted to, but confirmed, and upon appeal the decision was affirmed by the General Term. The owner appeals to this court. He should, I think, succeed.

As the commissioners might purchase, so, no doubt, the legislature might empower them to take by eminent domain, a right to enjoy a privilege in or out of the owner's estate, which would not give them a right to enjoy the estate itself by exclusive or permanent occupation. Such a right, however acquired, would be an easement, and as no grant is pretended, the question before us concerns the proper construction of the statute (*Brooklyn Park Comm'rs* v. *Armstrong*, 45 N. Y. 234), and the petition upon which the commissioners have undertaken to proceed. The act itself, inasmuch as it authorizes the taking of private property against the owner's consent, is to be strictly construed (*Sweet* v. *Buffalo, N. Y. & Phila. R. Co.*, 79 N. Y. 293; *Adams* v. *S. & W. R. R. Co.*, 10 id. 328), and while the property and the estate which is to be taken, whether an easement or fee, and the purpose to which it is to be applied may be designated in the statute (*People, ex rel. Herrick*, v. *Smith*, 21 N. Y. 595; *Sweet* v. *Buffalo, etc., R. Co., supra;* *Brooklyn Park Comm'rs* v. *Armstrong, supra*), it must be by unequivocal words, and in pursuing it all prescribed requirements must be strictly observed. (*Matter of the N. Y. C. &*

*H. R. R. R. Co., supra; In Matter of Application City of Buffalo,* 78 N. Y. 362 ; *Matter of Comm'rs of Wash. Park,* 52 id. 131.)

The owner may, if the legislature so declares, be divested of the fee, although the public use is special, and not of necessity perpetual. (*Sweet* v. *Buffalo, etc., R. Co., supra.*) On the other hand, the entire estate need not be taken, but only that interest which is necessary to accomplish the prescribed purpose. (*Sixth Ave. R. R. Co.* v. *Kerry,* 72 N. Y. 330 )

But as to all these things the legislature is the sole judge. By the laws now before us (Session Laws of 1881, chap. 101, of 1882, chap. 197), the respondents in all cases where they are unable to agree with the persons owning or having an interest in any lands, tenements or hereditaments, rights or property required for the purposes of the act, were authorized to apply for the appointment of commissioners to determine the damages sustained by each of such persons by reason of the taking of his lands, tenements, hereditaments, rights or property for that purpose. Those commissioners, when appointed, are required "personally to examine each parcel of land or other property to be taken or used," and "estimate and report to the court the several sums which will be a just compensation * * * * for the appropriation to such purpose of any property, rights or privileges that may be so required, or for the title or use of any such property," and upon the confirmation of the report and payment of the sum awarded, the statute declares that "the village shall become seized in fee of the property so required."

There is then not only this express language of the statute giving the largest estate possible, but the same is implied by the public use, to promote which the lands and rights are to be taken. The right to enter upon and use land for that purpose is necessarily exclusive, and is assumed by the respondents to be perpetual. It cannot co-exist, therefore, with a private right capable of concurrent exercise. The occupation by the public is not intended to be temporary, but permanent. No private person can do upon the land any act of ownership. He cannot

build upon it or excavate it; he cannot plant trees upon it or grade it, for either of these things might interfere with the conductor pipes, if such are used.   He could not raise upon it annual crops, for, although he planted, the necessities of the public use might require the surface to be broken up.   So, if the use should be more extensive and the whole space of thirty-three feet be required for an open canal or an aqueduct to pass the water — the commissioners might so use it — and if they chose, fence it in and altogether exclude the owner from the exercise of any act of possession or control on his part.   In view of the character of the work to be undertaken, its permanency and the need of public possession and control over the lands, and the express language of the act defining the estate to be acquired, it is impossible to suppose that the legislature intended that the right acquired should be limited in any degree.

But the respondents argue that the term " seized in fee " is equivalent to " possessed of the perpetual right " to conduct the water over the land described; that for this purpose they require not the land itself, but the right to use it.   I see little force in this position, and it is met by the decision in *Sweet* v. *Buffalo, etc., R. Co. (supra)*, where it was also argued that the interest taken by the city was for the special purpose of maintaining and protecting a sea-wall; but we were then unable to perceive any inconsistency in declaring the particular use for which the city was to take and hold the land, and at the same time providing that it should take a fee, and it was held that the particular use declared was in the nature of a trust engrafted on the fee; " that the purpose expressed does not qualify the estate taken, but simply regulates and defines the use for which it shall be held."   The act then in question (Laws of 1864, chap. 547) authorized the common council of the city of Buffalo to lay out a public ground for the purpose of maintaining and protecting a sea-wall or break-water along the shore or margin of Lake Erie," and in an action by one alleged to be the owner under title prior to and at the time of its condemnation, the result above indicated was reached — that

no right was left in him, that the title vested in the city. But in any view of the respondents' contention, an interest is implied in the land upon which the easement is imposed, and as its duration is to be permanent and not temporary, it is a freehold interest. Moreover, as the particular purpose for which the easement is imposed comprehends the whole practical beneficial use of the land itself, its appropriation is made as complete and exclusive by declaring that purpose, as if the words of the statute had been followed and the order in terms had declared that of the property so required the village should be seized in fee. (Statutes, *ante*, § 6.) The right to enter upon and use the specifically described lands " for the purpose of conducting water through and across said lands," includes the substantial occupation and enjoyment of the whole premises. It can be used, when so appropriated, for no other purpose.

Nor is the language of the act apt or proper to confer upon the commissioners the power to acquire any title to land or its use, less than one in perpetuity, and which should exclude the proprietor from the right to use and enjoy it. In construing the Drainage Act (Laws of 1867, chap. 774), by which commissioners were directed to take proceedings to acquire title to the easement upon or across the lands of any person refusing to allow them to enter on their lands and make the drains, it was held that nothing less than a legal title in perpetuity would serve the purposes of the act or the object contemplated. (*People, ex rel. Williams*, v. *Haines*, 49 N. Y. 587.) In the act which is now before us the word "easement" does not appear; but an easement is a right or privilege, and both these words are employed. I do not think it necessary to determine whether they apply to a right or privilege to convey water across lands, or whether they relate only to a right or privilege to draw or take water from one owning it, for the petitioners do not ask for a mere easement. It has been uniformly held that in proceedings of this character, extreme accuracy is essential for the protection of the rights of all parties. (*Matter of the N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 191.)

There must be no uncertainty in the description of the property to be taken, nor in the degree of interest to be acquired. Here the use described is an exclusive one, one which can lawfully be enjoyed only after the acquisition of a fee; for as I have above suggested, if the right in land is taken it is to be used in a manner incompatible with any other mode of enjoying it, and when the easement is so large as to preclude the ordinary use of property by the owner of the land, it is leaving to him only the name of owner, with no right whatever. The petition and order contain no words of limitation of the right sought to be acquired. They describe the property by metes and bounds, and the use indicated is the " conducting of water through and across said lands." This may be by open canal or otherwise, and is in no respect restricted by the subsequent words of addition, "and laying down pipes or other suitable conductors." There can be no such thing as excessive user or enjoyment. The order gives the use of the whole at any and all times, not only by underground or other pipes, but by any mode by which water may be carried.

The question put by the petitioners only calls for the opinion of the witness as to the diminution in value of the farm by the appropriation of a right or easement to lay within the described strip of land, conduit pipes or conductors for conducting water, and the right to enter and maintain them. If the petitioners desired only such right as is described in the question, they have failed in the statements of the petition. If they acquire the right stated in the order, they will as commissioners have the exclusive right of use and enjoyment of the land described, and whether the village has a fee in the land or a fee in the easement will make no difference to the owner; in either case he will be divested of all right to use or enjoy it. It will be taken from him without that just compensation which the law secures to the citizen when it appropriates his property to the public use. The questions which were excluded related to it, and those which were received tended to subvert that right.

The order appealed from should, therefore, be reversed,

the report of the commissioners set aside, with costs, and a re-hearing had before other commissioners to be appointed by the Supreme Court.

All concur, except RAPALLO, MILLER and EARL, JJ., dissenting.

Ordered accordingly.