THE COMMISSIONERS OF PARKS AND BOULEVARDS OF
    THE CITY OF DETROIT v. THE MICHIGAN
        CENTRAL RAILROAD COMPANY
                    ET AL.

*Eminent domain—Right of way of railroad—Highway crossing—*
                    *Damages.*

1. A right of way for a boulevard across the tracks of a railroad
   company may be condemned and taken under Act No. 388,
   Local Acts of 1889, which provides that the commissioners
   therein named may acquire, by legal proceedings, "any lands
   or interest in land which may be found necessary for the
   opening of any park and enlargement or extension of any park
   or boulevard which may hereafter be laid out, located, or
   established."

2. The provision of section 25 of said act that upon the confirma-
   tion of the report of the jury, and upon payment, tender, or
   deposit of the compensation awarded, "all the title of the
   persons who have been made parties as interested in the lands
   in question shall become and be vested in the city of Detroit,
   its successors and assigns, forever, for the uses and purposes
   for which the same was taken," when construed with the
   previous section, may well be held to mean that the title or in-
   terest which is subject to condemnation, and essential for the
   uses and purposes for which the same was taken, may become
   vested in the city.

3. In proceedings to condemn a right of way for a boulevard across
   the tracks of a railroad company under Act No. 388, Local
   Acts of 1889, it is error to refuse to permit the jury to con-
   sider the question of allowing the company compensation for
   the expense of erecting safety crossing gates; citing *Grand
   Rapids v. Railroad Co.*, 58 Mich. 648.

Appeal from recorder's court of Detroit. (Chambers,
J.) Argued January 6 and 7, 1892. Decided March 4,
1892.

Proceedings to condemn a right of way for boulevard

purposes across the property of respondents. Respondents appeal. Order of confirmation reversed, and case remanded to the jury for further proceedings. The facts are stated in the opinion.

*A. C. Angell*, for the Lake Shore & Michigan Southern Railway Company, contended:

1. The commissioners have no power to make the proposed condemnation, because:

   *a*—The line of the boulevard here has never been legally located and established.

   *b*—If ever legally established, it was done before the passage of the act of 1889.

   *c*—The land to be taken is already devoted to a public use; and property so devoted cannot be appropriated to a different public use without distinct legislative authority; citing Lewis, Em. Dom. § 276; *In re Buffalo*, 68 N. Y. 167; *Railroad Co. v. Williamson*, 91 Id. 552; *State v. Railway Co.*, 35 N. J. Law, 328; *Seymour v. Railroad Co.*, 126 Ind. 466; nor is the rule affected by the fact that the land is acquired by purchase for the first use, it being the *use*, and not the *method* of acquisition, which controls; citing *Depot Co. v. St. Paul*, 30 Minn. 359; *In re Providence, etc., R. R. Co.* (R. I.), 21 Atl. Rep. 965.

2. The commissioners cannot, under the terms of the act, take less than the fee, and condemn an easement; citing *DeCamp v. Railroad Co.*, 47 N. J. Law, 43; *In re Amsterdam Com'rs*, 96 N. Y. 351; *Roanoke City v. Berkowitz*, 80 Va. 616; *Page v. O'Toole*, 144 Mass. 303.

3. The court erred in refusing to permit the jury to consider the question of allowing respondents compensation for the expense of erecting safety crossing gates; citing *Grand Rapids v. Railroad Co.*, 58 Mich. 648; *Railroad Co. v. Railroad Co.*, 64 Id. 350.

*L. C. Stanley*, for the Chicago, Detroit & Canada Grand Trunk Junction Railroad Company, contended:

1. The power resides in the Legislature to take the property of a railroad company, compensation being made therefor; citing *Railroad Co. v. Railroad Co.*, 35 Mich. 273; but the power has not been exercised in this case.

2. An intent to grant the power to take land already appropriated

to a public use must appear by express words or by necessary implication; citing *Railroad Co. v. Railroad Co.*, 2 Gray, 1; *In re Boston, etc., R. R. Co.*, 53 N. Y. 574; and this rule is of special force in cases where the power to condemn land is granted in general terms merely, and which do not bring it within the legislative intention; citing Dill. Mun. Corp. § 588, par. 3; *Valparaiso v. Railway Co.*, 123 Ind. 467; *In re Buffalo*, 68 N. Y. 167; and such intention will not be found unless, by application of the subject-matter, no other course is reasonably suitable to effect the legislative purpose; citing *Springfield v. Railroad Co.*, 4 Cush. 63; and it is no answer to say that the taking is limited by the terms of the petition and verdict, etc., to the purposes of a highway, it having been held that, where the fee vests by the taking, any such declaration of purpose does not qualify the estate, but merely defines the trust to be engrafted on the fee; citing *Sweet v. Railway Co.*, 79 N. Y. 293, 301; *In re Amsterdam Com'rs*, 96 Id. 359; and when the corporation or body clothed with the power of eminent domain is empowered to take in perpetuity, the *quantum* of estate will be a fee, unless it clearly appears that a fee is not required, and of this requirement the real nature of the use is the test; citing *Railway Co. v. Gay*, 32 La. Ann. 471, 475; *Sweet v. Railway Co.*, 79 N. Y. 293; Lewis, Em. Dom. § 278; and where the right to cross a railroad involves the sequestration of a portion of its track, it would be doubted whether the Legislature intended to authorize it; citing *Railroad Co. v. Railroad Co.*, 31 N. J. Law, 214; and it is not the policy in Michigan that the right of way shall be severed and divested by every railroad crossing it; citing *Railroad Co. v. Railroad Co.*, 64 Mich. 366.

*Henry Russel,* for the Detroit & Bay City Railroad Company and the Michigan Central Railroad Company, contended for the same doctrine laid down by the preceding counsel.

*John J. Speed,* for appellees, contended:

1. While the act makes special provision for the regulation and care of the improvement, and for defraying the expenses, somewhat different from the provisions made in the city charter, this "broad street or boulevard" does not differ in its legal character, so far as the questions at issue are concerned, from any other public street; citing Lewis, Em. Dom. § 166.

2. The interest in lands which is required for a public highway is only an easement, and, unless it is otherwise specially provided

by law, such would be held to be the interest acquired by a condemnation; that is to say, the land is taken for a public highway, and can only be used for such purposes as a highway may be used, and, subject to such uses, the rights of the owners of the land remain as though the public easement did not exist; citing Lewis, Em. Dom. § 589.

3. Under the act in question, the commissioners of parks and boulevards were authorized to acquire interest in land for the boulevard, and, whenever the commissioners should deem it expedient, such acquisition could be made by legal proceedings; and it was not necessary that the act should specially provide for laying out the way across railroads, a general authority being sufficient; citing Lewis, Em. Dom. § 266.

4. Judge CAMPBELL, in his opinion in the case of *Paul v. City of Detroit*, 32 Mich. 108, 111, said: "It is perfectly evident that it can never be necessary to take a fee-simple absolute for either alleys or streets. But the omission of that provision will leave the lands taken subject to all public uses which are appropriate, and it may therefore be disregarded except as to such lands, if any, as require a fee to maintain public uses." It therefore necessarily follows that all that can be condemned is an easement for a right of way for the boulevard over the tracks of the respondent; and, unless the new uses to which the land is to be put are wholly inconsistent with the prior use, a second condemnation may be made without special authority from the Legislature, and a general authority to condemn is sufficient to condemn lands for the right of way of a highway over lands occupied as a right of way by a railroad company; citing Lewis, Em. Dom. § 266; *Railroad Co. v. Dayton*, 23 Ohio St. 510; *Hannibal v. Railroad Co.*, 49 Mo. 480; *Railway Co. v. Minneapolis*, 35 Minn. 141; *Railroad Co. v. Commissioners*, 39 N. J. Law, 28; *Bridgeport v. Railroad Co.*, 36 Conn. 255; *In re Extension·of Canal*, 50 How. Pr. 70.

MONTGOMERY, J.   This is a proceeding for condemnation under Act No. 388, Local Acts of 1889, relating to parks and boulevards and other public grounds of the city of Detroit.   The petition was filed in the recorder's court of the city of Detroit on May 22, 1891, and a jury duly impaneled to ascertain and determine the necessity of taking the several parcels of land, and to award the compensation.   The cause was heard, the jury found the necessity of taking the land, awarded damages, and the

proper order of confirmation was entered, from which the respondents appeal.

The first question presented is, does the boulevard act, being Act No. 388, Local Acts of 1889, confer upon the commissioners the right to condemn and take an easement? Section 15 provides that the commissioners may acquire, by legal proceedings,—

"Any lands or interest in land which may be found necessary for the opening of any park and enlargement or extension of any park or boulevard which may hereafter be laid out, located, or established."

The act in question relates to a boulevard already established under a previous act, which provided for the establishment and maintenance of a broad street or boulevard about the limits of the city of Detroit, and through portions of the townships of Hamtramck, Greenfield, and Springwells. It was known to the Legislature that this broad street or boulevard of necessity crossed the right of way of numerous railroad companies. The term "interest in land" should be so construed as to give effect to the act, and to further the very evident intent of the Legislature.

The act is far less crude that was the one under consideration in *Paul v. Detroit,* 32 Mich. 108. It was there claimed that the charter of the city declared all alleys highways, and attempted to take, not the use only, but the fee of the land for them. Justice CAMPBELL, in rendering the opinion of the Court, said:

"Such, no doubt, is the reading of section 27, and it is an instance of the carelessness and want of accuracy with which the charter has teen made incongruous in many respects. But the language of one section cannot be allowed to destroy or confound the remainder. It is perfectly evident that it can never be necessary to take a fee-simple absolute for either alleys or streets. But the omission of that provision will leave the lands taken subject to all public uses which are appropriate, and it

may therefore be disregarded except as to such lands, if any, as require a fee to maintain public uses.     *     *     * It will be found that the charter contains identical provisions for taking lands for 'highways, streets, avenues, lanes, alleys, public grounds or spaces,' and that section 27 declares all these alike highways, and declares the interest to be a fee.     But this enumeration contains not only different sorts of easements, but also uses entirely inconsistent with any general passage for highway purposes.     Grammatically the section means nothing, for it declares that 'the same' shall become a public highway, when there has been no reference for several sections to the land at all.     It can have no consistent meaning except by confining the term 'highway' to lands taken for that specific use."

So, in construing the present statute, the provision of section 25 that upon the confirmation of the report, and upon payment, tender, or deposit of the compensation, "all the title of the persons who have been made parties as interested in the lands in question shall become and be vested in the city of Detroit, its successors and assigns, for ever, for the uses and purposes for which the same was taken," when construed in connection with the previous section, may well be held to mean that the title or interest which is subject to condemnation, and essential for the uses and purposes for which the same was taken, may become vested in the city.

The cases cited do not, I think, conflict with these views.

*In re Amsterdam Com'rs*, 96 N. Y. 351, the act in terms provided that the village should become seised in fee of the property so required.  The case was not one where the property sought to be condemned was subject to a previous public servitude.

In the case of *DeCamp v. Railroad Co.*, 47 N. J. Law, 43, it is held that the term "land" includes the whole estate; but it is said:

"The cases in our own courts holding that one rail-

road company condemning lands already in use by another company will acquire only a right of crossing, and the use of the place of crossing in common with the other company, do not bear on this question. In such cases the legal effect of the condemnation is restricted to a right of way for a crossing, without the exclusive possession and use, not as a matter of choice with the condemning party, but as a legal consequence of the principle of law that the condemnation is inefficacious to destroy or impair the franchises of the other company. *State v. Railroad Co.*, 36 N. J. Law, 181; *Railroad Co. v. Long Branch Com'rs*, 39 Id. 28."

In the case above referred to (*State v. Railroad Co.*) the court, in construing the statute which provided that, if a company cannot agree with the owner of lands or materials required, a particular description of the land or material required shall be given in writing under oath to one of the justices of the supreme court, who shall cause notice to be given to the persons interested, if known, say:

"By owner is meant the person having some legal estate which the company proposes by the condemnation to acquire. Under the more comprehensive expression of 'persons interested' are included not only the person in whom is vested the legal title which the company proposes to acquire as indicated by the application, but also other individuals having some independent right or interest therein not amounting to an actual legal estate, such as an easement of a right of way, inchoate rights of dower or curtesy, or incumbrances."

In my opinion, where, as in the present case, the condition of the title and interests in the property sought to be subjected to the public use is such that a greater estate would be inconsistent with the public use to which it has been dedicated, there is no difficulty in saying that the language employed by the Legislature is sufficiently broad to confer the right to acquire such an easement as is sought to be appropriated in the present case.

It is contended that the court was in error in refusing

to permit the jury to consider the question of allowing respondents compensation for the expense of erecting safety crossing gates. We think the court was in error in this.

The doctrine laid down in *Grand Rapids v. Railroad Co.*, 58 Mich. 648, is applicable to this case. It was there said:

"The damage done to a railroad by having a highway run across it must necessarily include all the additional expense entailed by such a crossing, which in a city may involve a considerable outlay in making the crossing safe, and providing guards against accident. Under the Constitution there must be just compensation, and this cannot be denied by law."

Some other errors are claimed, but what we have not noticed must be overruled.

For the error pointed out, the verdict and order of confirmation must be reversed, and the case remanded to the jury for further proceedings.

Costs of this Court will be allowed respondents.

MORSE, C. J., and LONG, J., concurred.

GRANT, J. *(dissenting)*. These proceedings were instituted by the commissioners of parks and boulevards of the city of Detroit to condemn a right of way for the use of the boulevard across the tracks of the defendant companies. The averment in the petition descriptive of the use to which the land is sought to be appropriated is as follows:

"It is intended by this petition to take and condemn, for the purposes of a crossing of the said boulevard, as a public highway, over the rights of way of the said above-mentioned railroad companies, all the land and right of way within the limits of the said boulevard extended northerly and southerly over said rights of way, and so much of the interests of the said railroad companies therein as may be necessary for the purposes of the said crossing, and only for said purpose, and not

otherwise affecting the interest or interfering with said railroad companies."

It appears from this averment that the petitioners recognized that they could not condemn the fee of these lands for the purposes of the boulevard because they had already been appropriated and devoted to another public use. The respondents cannot be deprived of the use of land which they have legally acquired, without express authority from the Legislature. It is not contended that the boulevard act confers any such authority. Under the proceedings the petitioners asked and obtained an easement, to wit, a right of way over the defendants' roads. Does the boulevard act confer upon the petitioners the right to condemn and take an easement, is the important question now raised.

The act in question vests in the petitioners the control of the parks and boulevards of the city. The boulevard is 150 feet wide. It does not lead into the city, but, under the provisions of the act, is to extend around it from the river on the east to the river on the west, while in fact it is now only laid out from Jefferson avenue on the east to Fort street on the west, and is far from completion between these points. It is not a "street" or "highway" in the sense in which these terms are usually understood. It is intended to be used more for pleasure than for business traffic.

Section 15 of the act empowers the commissioners to receive conveyances of lands for "parks, public grounds, or boulevards," and to purchase, with the approval of the council, any lands, and to acquire by legal proceedings, in the manner provided, "any lands or interest in land which may be found necessary for the opening of any park and enlargement or extension of any park or boulevard," etc. By section 21 the jurors are required "to ascertain and determine the necessity of taking the

several parcels of land sought to be taken for the purpose set forth in the petition." If the jury find that the necessity to take exists, they must then award damages, and it is provided by section 25 that upon the confirmation of the report, and upon payment, tender, or deposit of the compensation,—

"All the title of the persons who have been made parties as interested in the lands in question shall become and be vested in the city of Detroit, its successors and assigns, forever, for the uses and purposes for which the same was taken."

The term "interest in land" used in the statute does not refer to an interest which the city may take out ·of the fee, but to the interest which one may have in the land sought to be taken, less than the fee, such as a dower or leasehold interest.

Under these provisions the entire title to the lands taken is vested in the city. The language used is not, in my judgment, susceptible of any other interpretation. The fee is conveyed when the land is taken under this act just as certainly as it is when land is taken for a park, cemetery, or school-house site. The reason for thus acquiring the title is apparent from other provisions of the act. Parks, public grounds, and boulevards are placed in the sole control of the commissioners, who are charged with their management, maintenance, and care, the regulation of their use, their improvement and ornamentation. The evident purpose of the act is to obtain the entire title, so that no question can be raised as to the power of the commissioners, and their right to exclusive jurisdiction over these public places.

No power is expressly conferred by this act to obtain a right of way except by obtaining title to the land. No power to condemn an easement can be inferred where the only power given by the statute is to condemn the

land itself.     *DeCamp v. Railroad Co.,* 47 N. J. Law, 43; *In re Amsterdam Com'rs,* 96 N. Y. 351; *Roanoke City v. Berkowitz,* 80 Va. 616; *Page v. O'Toole,* 144 Mass. 303 (10 N. E. Rep. 851).

In ascertaining the legislative intent courts are limited to the plain provisions of legislative acts.   In these proceedings to take land for the public use the power to take is limited to the express provisions of the law, or must ·of absolute necessity be implied.   Because the boulevard, as established under the act of 1879, crossed these railroads, we cannot infer, either as a matter of law or fact, that the Legislature intended to confer upon these commissioners the power to condemn a right of way across them as though the boulevard were an ordinary street or highway, and the crossing necessary to make it available for use.   The boulevard. is about eleven miles in extent.   From Jefferson avenue it extends fully three miles before reaching a railroad crossing.   Two crossings are there in close proximity. ·After these crossings are passed, it extends more than four miles before reaching the tracks of two of the respondents, after which it reaches the tracks of the Michigan Central Railroad.   It is reached and crossed by all the avenues and streets extending from the river front and interior of the city. It is obvious that the necessities of business do not require the right of way across these railroads, and that the boulevard can be used for purposes of pleasure without it.   Under these circumstances I do not think that legislative action authorizing the condemnation of a right of way can be inferred.   The question of crossing these roads where there are many tracks, over which an immense traffic is carried on, was of great importance; yet it is not mentioned in the act.   If the Legislature knew that the route of the boulevard was across these tracks, and yet made no provision for crossing them, the

presumption is that it did not then intend to confer the right. If the Legislature did not know that fact, then clearly there has been no legislative action in a matter which is exclusively within its jurisdiction.

Further action on the part of the Legislature is necessary before the petitioners can obtain a right of way across the defendants' roads.

The order of the court below confirming the report of the jury should be set aside, and the proceedings quashed.

Assuming that the petitioners possess the power to condemn, I concur with my brethren in the conclusion reached by them on the other branch of the case.

McGRATH, J., did not sit.