CITY OF GRAND RAPIDS *v.* BENNETT.

1. EMINENT DOMAIN — NECESSITY — EVIDENCE.

In proceedings to condemn land for the opening of a street, opinion evidence as to the necessity for the proposed improvement is inadmissible.

2. SAME—OPENING STREET ACROSS RAILROAD—MEASURE OF DAMAGES:

Where a street is opened across a railroad right of way, an exclusive use is not acquired by the public, and therefore the value of the land is not a proper measure of damages   Per McGRATH, C. J.

3. SAME—DAMAGES—FORM OF VERDICT.

In the absence of a statutory requirement, the jury in condemnation proceedings need not itemize the damages awarded. Per McGRATH, C. J.

4. SAME—OPENING STREET ACROSS RAILROAD—DAMAGES—SAFETY GATES.

The compensation to be made to a railroad company on the opening of a street across its tracks should include the expense of constructing, maintaining, and operating a gate or tower, if the jury find the same to be necessary for the protection of the public.   McGRATH, C. J., dissenting.

Appeal from superior court of Grand Rapids; Bur-
lingame, J. Submitted May 3, 1895. Decided October
1, 1895.

Proceedings by the city of Grand Rapids under 3 How.
Stat. § 3064*a et seq.*, against Joseph A. Bennett and oth-
ers, to condemn land for the opening and ex ʌnsion of
Campau street. Respondents appeal from an order con-
firming the verdict of the jury. Reversed.

*More & Wilson, Hatch & Wilson, T. J. O'Brien*, and *J.
H. Campbell*, for appellants.

*William Wisner Taylor*, for appellee.

McGRATH, C. J.  This is a proceeding to open Campau
street, now a *cul-de-sac*, through to Ferry street.

Error is assigned upon the admission of the opinions
of witnesses as to the necessity of the proposed opening.
Eight witnesses were asked one of the following ques-
tions:

"What have you to say about its being or not being a
necessary public improvement?

"From your knowledge of that part of the city, and
your acquaintance with its past and present condition
and its present growth, state to the jury what reasons
you have why the opening of this street is or is not
a necessary public improvement, if you have any reasons
to give."

One witness answered as follows: ʼ

"Well, sir, I consider the opening of Campau street as
the next improvement to the taking of Grab Corners in
the center of the city. I am satisfied, from my knowledge
of the neighborhood and the condition of the property
and the business there, that it is a necessary public im-  .
provement. I believe thɐt the people who are directly
interested are sufficient, enough of them, with those who
use the street, to call them part of the public at least;
and I think, for the interests of the city in the west,
with those thoroughfares established and used, that it
should be opened."

106 MICH.—34

Another said:

"Well, I consider the necessity of the improvement, in the first place, as a general necessity to the public; and, on the other hand, it is a necessity from the property interests down there on that street, on this end and on the other, and also the heavy traffic from the west and north-west part of the city to the south-west part or to the depots, as you might say. I have noticed,—I have done business on the street for the last eight or nine years, and I have noticed that the heavy traffic has almost invariably gone around that way, seeking an outlet to the depots, avoiding Monroe street. That is another reason why I consider it a public improvement. And, of course, the property holders down there, they have interests there that require an opening up of the street. It is a necessity, the same as any other street is, as I consider it, in any other part of the city."

Another answered as follows:

"That property down there is quite central property. It is not residence property; it is business property. And Campau street is partly opened now, and the future of the city will demand that it must be opened some time; and the property is destined to be built over, is being built over all the time with buildings, and this space that is now sought to be taken for a street will be built on; and when it becomes a necessity, which can no longer be put off, to open the street, it is going to cost the city a great deal more to open it than it is at the present time. And another thing, the street should be opened, and the grade line established, so that people building on either side of the street could know where they are setting their buildings. One building should not be set up above another; there should be some authority—some regularity—in regard to the establishment of that class of buildings; and we all know very well, if this ground was not platted —Now if there is a plat made and presented to the board of public works, with the street half opened, they would throw it out in a moment; they would say that the streets must be dedicated to the public. It is a public necessity."

It was the province of the jury to determine the question of the necessity for the opening. It was competent to show the location; that it was in the central and busi-

ness portion of the city; that there was a great deal of heavy traffic through that district; that other parallel streets, through which traffic was forced, were occupied by street-car tracks; that the traffic often became congested in existing streets; that there was a heavy grade in such streets; that the grade was much less on the line of the proposed street; that business blocks were being erected and other improvements made in the locality; and other facts from which the necessity for the street might properly be inferred. The objection to the questions put is that they were calculated to draw out, and did actually bring out, not only opinions, but arguments, rather than facts. There is no valid reason why the jury, aided by arguments coming from counsel, rather than from witnesses, cannot in such a case form an intelligent opinion upon the question of the necessity for the taking without the aid of opinion evidence. *City of Detroit* v. *Brennan,* 93 Mich. 338.

The proposed street crossed the right of way of the Grand Rapids & Indiana Railroad Company, and error is assigned on behalf of that company. The court instructed the jury that—

"The damages done to the railroad company by having a highway run across their right of way must necessarily include all the additional expenses entailed upon them by reason of such crossing, which, in a city like this or in this city, must necessarily involve considerable outlay in making and keeping in repair the crossings convenient and safe, putting in gates and towers, if such you find to be necessary, and providing guards against accident, or, in the language of Judge Sherwood in another case somewhat similar to this, as far as the railroad interests are concerned, that, in addition to the damage for the use of the land occupied by a street in crossing this right of way, there should be added to that any extra expense created by the use of such right of way for the street in the ordinary use of respondent's road, and such other damage as it may sustain for injury to its track, right of way, and franchises occasioned by the crossing, and which may properly be considered as the natural, necessary, and

approximate cause thereof. The rule here stated does not include expenses made necessary in order to comply with the police regulations of the State or municipality, but such damages only as arise in making the structural changes necessary to comply with statutory regulations, which must necessarily continue in the future operation of the respondent's road, as well as full value for all lands taken that are not included in their right of way, and all damages caused thereby to their remaining premises, if any such you find. I have referred above to gates and towers. Among other structural changes in this case may be found the putting down and keeping in repair of approaches to and crossings of this right of way, and the tracks thereon, of planks or other suitable material, the making and putting in of sidewalks, such structural changes as the law requires at street crossings in this city.

"There is some little testimony, I believe, in regard to one of the side tracks being used for storing cars. In addition to such other damages, you should, in fixing just compensation, take into consideration the fact, if you find by the evidence that it exists, that the railroad company has now a side track upon which it sometimes stores its cars, upon its right of way upon this proposed street crossing, and allow such compensation for the interrupting of such use of such side track for storage purposes as will fully compensate the company for the interference therewith. In short, you are to render such just compensation for all damages to the respondents as will leave them all just as well off pecuniarily as you now find them.     *     *     *

"You will determine whether or not it will be necessary, for the safety of persons crossing the tracks, that gates shall be maintained in the street on each side of the tracks. If you find that it will be necessary to have such gates, you must allow to the company the cost of such gates and apparatus to operate the same. If you find that such gates will be necessary, and that they should be operated by a tower at Campau street, and not from the tower now standing at Waterloo street, you must allow the cost of the tower."

The following is a sketch of the land sought to be taken:

The railroad property is parcels numbered 2 and 3. The company operates four tracks, which occupy the southerly portion of No. 3 and all of parcel 2 of the railroad property. Counsel for the railroad company insist that the railroad company is entitled to the full value of parcels 2 and 3; that the value of the land is the only measure of compensation under the Constitution. There is no force in this contention. The right of a railroad company to the exclusive use of its right of way is unquestioned. That is the property right which is sought to be taken. The property of a railroad company may be taken for public use, whenever the necessities of the public require it, to an extent not absolutely necessary to successfully carry out the object and purposes of the franchises granted to the company; and the land occupied by the company as its right of way may be taken under the power of eminent domain, subject to the single limitation mentioned, to the same extent

as the land of any private citizen, for either the use of another company or for a public highway. *Grand Rapids, Newaygo, etc., R. Co.* v. *Grand Rapids & Ind. R. Co.*, 35 Mich. 265; *Toledo, etc., R. Co.* v. *Detroit, etc., R. Co.*, 62 Mich. 564. The public do not by the condemnation proceedings acquire an exclusive use, but a concurrent use, and the railroad company is deprived of the exclusive use. There is no more difficulty in determining the compensation to be awarded than in case of a railroad crossing or in case of an added burden imposed upon a highway or street. In neither case would the value of the land be the measure of damages.

Counsel requested the court to instruct the jury that they should, in their verdict, specify separately the item or items of damages awarded: *First,* the value of the lands; *second,* damage to that portion of the whole parcel not taken; *third,* value of improvements taken; *fourth,* cost of improvements made necessary by the opening of the street,—in the case of the railroad company, the sum allowed for crossings, the sum allowed for gates, the sum allowed for tower, and the sum allowed for repairs and maintenance of crossings, gates, and tower, and pay of operator. We know of no rule of law requiring the jury to itemize the compensation awarded or damages found. In *City of Detroit* v. *More,* 76 Mich. 515, it was held that the jury could not offset the benefits in a street-opening proceeding against the compensation awarded, and simply report the balance found; but that was under a statute requiring a separate determination and report of each. Act No. 354, Local Acts 1885, p. 343.

It is contended by counsel for the railroad company that the company is entitled to compensation for the expenses it will be put to in the construction and operation of a gate or tower. *Grand Rapids* v. *Grand Rapids, etc., R. Co.*, 58 Mich. 641, and *Commissioners of Parks* v. *Chicago, etc., R. Co.*, 91 Mich. 291, are relied upon to sustain this contention; also *Commissioners of Parks* v. *Michigan Cent. R. Co.*, 90 Mich. 385. Neither of these cases

contains any discussion of the question here presented. In the first case cited, no claim was made for a gate, tower, or flagman, nor was any testimony introduced relative to any such possible or probable necessity. In the subsequent cases, simple reference is made to the language used in that case. The statute requires the maintenance of crossings, and the construction and maintenance of cattle guards and warning signs; and the language used in that case must, I think, be held to apply to such safeguards as are required by law to be maintained by railroad companies. The determination of the jury imposes no obligation upon the railroad company, and the company is under no obligation, to construct gates or towers at crossings, or to maintain them, unless ordered so to do by the railroad commissioner. I find no authority elsewhere for the allowance of compensation in condemnation proceedings for either probable or possible contingencies. The authorities all hold that the damages must be real, tangible, and proximate. In the case of *Old Colony, etc., R. Co.* v. *Inhabitants of Plymouth Co.*, 14 Gray, 155, it was expressly held that, in case of the opening of a street across the right of way of a railroad company, the latter was entitled to compensation for the expense of erecting and maintaining signs and cattle guards at the crossing, and for keeping the same in repair, but not on account of its liability to be compelled by the county commissioners to build a bridge for the highway over its track. In *Searle* v. *Railroad Co.*, 33 Pa. St. 57, it was held that contingent future disadvantages should not be taken into consideration as an element of damages, in a proceeding to condemn lands for railway purposes. In *Peoria & Pekin Union R. Co.* v. *Peoria & Farmington R. Co.*, 105 Ill. 110 (10 Am. & Eng. R. Cas. 129), and in *Chicago, etc., R. Co.* v. *Joliet, etc., R. Co.*, 105 Ill. 388 (14 Am. & Eng. R. Cas. 62), the court held that the damages sustained by one company, in case of a crossing by another, by the delay, inconvenience, and trouble in stopping before crossing,

was not a proper element for consideration, nor was the increased danger to traffic. Reference must be had to the immediate consequences. *Sater* v. *Plank-Road Co.*, 1 Iowa, 386; *Brannin* v. *Johnson*, 19 Me. 361; *Henry* v. *Railroad Co.*, 2 Iowa, 288; *President, etc., of Schuylkill Nav. Co.* v. *Thoburn*, 7 Serg. & R. 411; *Watson* v. *Railroad Co.*, 37 Pa. St. 469; *Troy & Boston R. Co.* v. *President, etc., of Northern Turnpike Co.*, 16 Barb. 100; *Richmond & Lex. Turnpike Road Co.* v. *Rogers*, 1 Duv. 135; *Stone* v. *Railroad Co.*, 68 Ill. 396; *White River Turnpike Co.* v. *Vermont Cent. R. Co.*, 21 Vt. 590; *Eaton* v. *Railroad Co.*, 51 N. H. 504; *Lake Shore, etc., R. Co.* v. *Cincinnati, etc., R. Co.*, 30 Ohio St. 604.

The present case affords an illustration of the attempted application of the rule contended for by appellants. Testimony was offered respecting the cost and expense of erecting and maintaining a gate, and of the wages of a gateman, and also the cost of constructing, maintaining, and operating a tower; but there has been no voluntary determination by the company as to which it shall employ, and there is no obligation upon its part to maintain either, and it may never construct either gate or tower; yet counsel insist that the measure of its damages is the cost of constructing and maintaining a gate, and a sum of money the interest upon which will pay the expense of a watchman for all future time. I am not prepared to say that, in a case where the testimony tended to show that the protection of the company's property necessitated a gate, flagman, or tower, that question should not be presented to the jury, and an award properly made covering such expense; but the provisions of the statute relating to gates and flagmen are designed, primarily, at least, for the protection of the public in the use of the street or highway, and the testimony in the present case relating to the possible necessity for a gate or flagman was predicated upon that danger, and not upon the possible need of protection to the company's property. There was no testimony tending to show such an exposure to danger of railroad prop-

erty as would have warranted the jury in placing the necessity for gates or a flagman upon that ground, nor is such danger so apparent as to obviate the necessity for proof upon that question. The rule laid down in the cases to which counsel have referred should be limited to such expense as the statute makes imperative.

For the error in the admission of the opinions referred to, the judgment must be reversed, and a new trial awarded.

GRANT, J. We concur in the opinion of our brother, the Chief Justice, upon the question of the opinion evidence. We hold that the question of damages is ruled by the following cases: *Grand Rapids* v. *Grand Rapids, etc., R. Co.,* 58 Mich. 641; *Commissioners of Parks* v. *Chicago, etc., R. Co.,* 91 Mich. 291; *Commissioners of Parks* v. *Michigan Cent. R. Co.,* 90 Mich. 385.

LONG, MONTGOMERY, and HOOKER, JJ., concurred with GRANT, J.