## VILLAGE OF PLYMOUTH *v.* PERE MARQUETTE RAILROAD CO.

1. EMINENT DOMAIN—RAILROADS—HIGHWAYS—CONDEMNATION OF CROSSING—DAMAGES.

   On condemnation of a highway across its tracks a railroad company is entitled to compensation for structural changes made necessary, and also for any direct expense made necessary by the fact of the street opening, as in maintaining a flagman, or gates, or cattle guards, but not for the observance of public regulations, such as cutting trains to avoid obstruction of the crossing.

2. DAMAGES—INSTRUCTIONS—HARMLESS ERROR.

   Error in the form of an instruction authorizing consideration of an element of damages that should have been eliminated is not prejudicial to the party in whose favor it was given.

Appeal from Wayne; Hosmer, J. Submitted October 7, 1904. (Docket No. 35.) Decided March 21, 1905.

Proceedings by the village of Plymouth against the Pere Marquette Railroad Company to condemn a right of way for a street crossing. From an order confirming the award of the jury, respondent appeals. Affirmed.

*Frederick W. Stevens* (*Charles McPherson,* of counsel), for appellant.

*Paul W. Voorhies* (*Harry Helfman,* of counsel), for appellee.

MONTGOMERY, J. This is a review of a proceeding taken by the petitioner to condemn a right of way for a street across the defendant's track. The jury determined that the opening of the street was a necessary public improvement, and awarded the respondent damages to the amount of $382.64. The respondent brings the case here for review, contending that the circuit judge erred in his instructions to the jury as to the proper items to be considered in awarding damages.

It appears that at the point where the proposed street crosses the respondent's tracks there are three tracks. The center track is the main track for trains between Toledo and Saginaw. The east track curves to the right, and connects the main track to Toledo with the main track to Detroit. The west track is known as the "south lead track," and extends to the yard and the engine house. The testimony tended to show that the south lead track and the Detroit " Y" are used for storing through trains while the locomotives are being supplied with coal and water and while the trainmen are waiting orders to proceed, and that upon the opening of this street, if the present method of operating trains continues, it will be necessary to open certain of defendant's trains in order to avoid an obstruction of the new street for more than five minutes at a time, and that this will cause some delay and some additional expense in the operation of the road.

It is contended by the respondent:

*First*, that the damages caused by this delay and expense in opening trains is a proper item to be awarded to it in these proceedings; and, *second*, that, while the circuit judge was of this opinion, his charge was given in such form as to impress upon the jury his individual view that no tangible damages were shown, and that in this there was error.

The petitioner's counsel take issue with the appellant on both propositions, and contend, *first*, that such damages as the respondent may sustain in the operation of its road by being required, in pursuance of police regulations, to open its trains to admit of teams passing across its tracks in the proposed street, are damnum absque injuria, and insist, *second*, that the circuit judge not only gave the rule contended for by respondent's counsel, but that his charge is not subject to the criticism made.

Manifestly, the question of first importance is whether the railroad company is entitled to compensation for the inconvenience to which it will be put in operating its trains so as to admit of the use of the new street as a highway. This precise question has never been determined by this

court.  It is undoubted that in case of a condemnation of a right of way across a railroad the company is entitled to compensation for structural changes made necessary, and also for any direct expense made necessary by the fact of the street opening, as in maintaining a flagman, or gates, or cattle guards.  *City of Grand Rapids* v. *Railroad Co.*, 58 Mich. 641; *Commissioners of Parks & Boulevards of Detroit* v. *Chicago, etc., R. Co.*, 91 Mich. 291; *Same* v. *Michigan Central R. Co.*, 90 Mich. 385; *City of Grand Rapids* v. *Bennett*, 106 Mich. 528; *Chicago, etc., R. Co.* v. *Hough*, 61 Mich. 507.

On the other hand, it is well settled that compensation for the observance of public regulations cannot be demanded.  3 Elliott on Railroads, § 1103; *Kansas City Suburban Belt R. Co.* v. *Kansas City, St. Louis & Chicago R. Co.*, 118 Mo. 599; *Lake Shore, etc., R. Co.* v. *Cincinnati, etc., R. Co.*, 30 Ohio St. 604; *Chicago, etc., R. Co.* v. *Joliet, etc., R. Co.*, 105 Ill. 388; *Peoria & Pekin Union R. Co.* v. *Peoria & Farmington R. Co.*, 105 Ill. 110; *Flint, etc., R. Co.* v. *Detroit, etc., R. Co.*, 64 Mich. 350.

The question is whether the inconvenience occasioned the respondent by opening the street in question falls within the first class or the latter.  It is conceded by counsel for the respondent that, if the damage caused by cutting the trains arises out of a necessity to observe a mere police regulation, such damages are damnum absque injuria, but it is contended that the cutting of trains at this point is not only enjoined by a police regulation, but that any use of the street by the company which would unreasonably obstruct the same could, in the absence of any statute, be prevented, or the injury resulting therefrom could be redressed.  It is true that any unreasonable obstruction of a street may constitute a nuisance, but we think it does not follow that statutory regulations of the joint use of streets by a railroad company and the public may not, in a sense, be treated as a police regulation.

In the present case the damages were sought to be measured by the loss of time and the increase of expense

because the company would be precluded from occupying the street more than the time fixed by statute.    The measure assumed was not what might, under any circumstances, be reasonable.    We think the case ought not, in this respect, to be distinguished from *Flint, etc., R. Co.* v. *Detroit, etc., R. Co.*, 64 Mich. 350.    In that case it was sought to recover damages which would result from being compelled to stop the trains of the respondent's road before crossing the track of the petitioning road.    The question was ably discussed in an elaborate opinion by Mr. Justice CHAMPLIN, and the conclusion was reached that such damages could not be recovered.    It was held that the company was not entitled to compensation for obeying a police regulation, and it was said:

" These are police regulations, enacted by the legislature, designed to promote the public safety, and are as binding upon an existing road as one newly organized. They stand upon an equality before the law, and neither can levy tribute upon the other as a compensation for obedience to its requirements.    It is subject to amendment or repeal at any time the legislature may see fit, and for this reason, as well as for the absolute impossibility of determining in advance the number of trains which in the future operation of the road would be required to stop at such crossing, the damage arising therefrom is uncertain and conjectural.    But, aside from this, any incovenience or annoyance or loss suffered in obeying the police regulations of the sovereign authority is damnum absque injuria."

Much of this reasoning applies with peculiar force to the case before us.    The legislature may repeal the statute fixing the five-minute rule at will, or may change that limit so as to remove any inconvenience to respondent, and to this extent that regulation is a police regulation.

We think this element of damages should have been eliminated from the case, and it follows that there was no error to the prejudice of respondent.

The order is affirmed, with costs.

MOORE, C. J., and CARPENTER, GRANT, and HOOKER, JJ., concurred.